## WILSON *v.* SALAMANCA.

1. Bonds of a township in Kansas payable to A., a railroad company, or bearer, were duly executed by the township trustee and township clerk, acting in their official capacity, as its legal representatives. They recite that they were issued pursuant to an order of the proper officers of the township, made by authority of an act of the legislature which is therein cited, and were ordered by the qualified electors of the township, at an election duly held. An action was brought by a *bona fide* holder for value of the interest coupons attached to some of the bonds, who had no notice of any fact impairing their validity. *Held,* that it is not a defence to the action that at the time of voting and that of issuing the bonds their entire amount was in excess of the proportion which by law they should bear to the taxable property of the township, or that after the vote at said election had been cast in favor of subscribing for stock in B., a railroad company, the subscription was made for stock in A., and said bonds issued in payment therefor, B. having, under a law existing at the time of said election, become merged and consolidated with A. to form a continuous line of road.

2. This case distinguished from *Harshman* v. *Bates County,* 92 U. S. 569.

ERROR to the Circuit Court of the United States for the District of Kansas.

This was an action brought by William C. Wilson against Salamanca Township of Cherokee County, Kansas, on three hundred and twenty-one interest coupons detached from bonds, issued by it to the Memphis, Carthage, and Northwestern Railroad Company, to aid in the construction of its road. The bonds, with the certificate of the auditor of state indorsed thereon, are in the following form: —

"UNITED STATES OF AMERICA.

"STATE OF KANSAS, COUNTY OF CHEROKEE.

"*Salamanca Township Bond.*

"No. 149.]          Interest ten per cent per annum.          [$500.

"Know all men by these presents, that the municipal township of Salamanca, in the county of Cherokee and State of Kansas, acknowledges itself indebted and firmly bound to the Memphis, Carthage, and Northwestern Railroad Company, or bearer, in the sum of $500, which sum the said township of Salamanca, for value received, hereby promises to pay said company, or bearer, at the

National Park Bank in the city of New York and State of New York, twenty years after date, with interest thereon from the date hereof, at the rate of ten per centum per annum, payable annually on the first day of September of each year, on the presentation and delivery at said National Park Bank, in said city of New York, State of New York, of the coupons of interest hereto attached.

" This bond is issued pursuant to an order of the proper officers of said township made by authority of an act of the legislature of the State of Kansas, entitled 'An Act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads, water-power, or other works of internal improvement, and providing for the registration of said bonds, the registration of other bonds, and the repealing of all laws in conflict therewith,' approved March 2, 1872, and ordered by the qualified electors of said township at an election duly held.

" In testimony whereof, the said township of Salamanca has executed this bond by the township trustee of said township, under the order of the proper officers of said township, signing his name hereto, and by the township clerk of said township, under like order, attesting the same, and affixing hereto his name.

" Done this second day of September, A.D. 1872.

." JOHN RALEY,<br>
" <i>Township Trustee of Salamanca Township,</i><br>
<i>Cherokee County, Kansas.</i>

"Attested by W. O. BRANNIN,
" <i>Township Clerk of Salamanca Township,</i><br>
<i>Cherokee County, Kansas."</i>

" I, A. Thoman, auditor of the State of Kansas, do hereby certify that this bond has been regularly and legally issued, that the signatures thereto are genuine, and that such bond has been duly registered in my office, in accordance with an act of the legislature entitled an act to authorize counties, incorporated cities, and municipal townships to issue bonds for the purpose of building bridges, aiding in the construction of railroads or other works of internal improvement, and providing for the registration of such bonds, the registration of other bonds, and the repealing of all laws in conflict therewith. Approved March 2, 1872.

" Witness my hand and official seal, this eleventh day of October, 1872.

" A. THOMAN,<br>
" <i>Auditor of State."</i>

[SEAL.

The coupons are in the following form : —

"$50.]　　　　　　　COLUMBUS.　　　　　　[$50.

"The township of Salamanca, Cherokee County, Kansas, promises to pay the sum of fifty dollars on the first day of September, A.D. 1873, being interest on bond No. 149, for $500, payable at the National Park Bank in the city and State of New York.

"W. O. BRANNIN,

"*Township Clerk of Salamanca Township,*<br>*Cherokee County, Kansas.*"

The statute of Kansas of Feb. 25, 1870 (Laws of Kansas, 1870, 189), to enable municipal townships to subscribe for stock in any railroad, provides that the amount of bonds voted by any township shall not be above such an amount as will require a levy of more than one per cent per annum on the taxable property of such township, to pay the yearly interest on the amount of bonds issued.

The material provisions of the statute of March 2, 1872 (Laws of Kansas, 1872, 110), which is mentioned in the bonds and certificate of the auditor, are as follows : —

"SECT. 1. That the board of county commissioners of any county, the mayor and common council of any incorporated city, and the trustee, clerk, and treasurer of any municipal township in this State, are hereby empowered to issue the bonds of such county, city, or township, in any sum necessary, not greater than ten per cent, inclusive of all other bonded indebtedness of the taxable property of such county, city, or township, for the purpose of building bridges, free or otherwise, or to aid in the construction of railroads or water power, by donation thereto, or the taking of stock therein, or for other works of internal improvement. . . . *Provided further*, that under a proposal for aid to any railroad, any township having less than $200,000 taxable property may issue in addition to the ten per cent authorized in this section, ten per centum of an amount equal to the number of miles of railroad (agreed under such proposal to be constructed within such township) multiplied by six thousand. *And provided further*, that the limit prescribed in this section shall not apply and be considered to restrict or prevent the issuing of any bonds heretofore voted, or vote now pending, in any county or township in this State, and which bonds may not have yet been issued ; but that the limit herein shall only be considered as applying only to the issuing of bonds to be hereafter voted under this law."

Sect. 2 provides when and where such bonds shall be payable. "And (such bonds) if issued by a township shall be signed by the township trustee and attested by the township clerk."

"Sect. 3. Before any bonds shall be issued, as herein provided, the same shall be ordered by a vote of the qualified electors of such county, city, or township."

"Sect. 12. The officers of any county, city, or township . . . shall at the time of issuing the same (such bonds) make out and transmit to the auditor of State a certified statement of the number, amount, and character of the bonds so issued, to whom issued and for what purpose, which statement shall be attested by the clerk of the county, city, or township issuing the same." . . .

"Sect. 14. Within thirty days after the delivery of such bonds, the holder thereof shall present the same to the auditor of State for registration, and the auditor shall upon being satisfied that such bonds have been issued according to the provisions of this act, and that the signatures thereto of the officers signing the same are genuine, register the same in his office, in a book to be kept for that purpose, in the same manner that such bonds are registered by the officers issuing the same; and shall under his seal of office certify upon such bonds the fact that they have been regularly and legally issued ; that the signatures thereto are genuine, and that such bonds have been registered in his office according to law."

The consolidation of railroads in Kansas was authorized by a statute approved in 1870. 1 General Laws, 1872.

The township answered, —

1. That the bonds mentioned in plaintiff's petition, and to which the coupons in suit were attached, are void, because the whole issue was $75,000, and the taxable wealth of the township was: in 1871, prior to the vote on subscription, $148,686; in 1872, prior to the issue of the bonds, $181,591; and in 1873, prior to the maturity of the coupons first falling due, $159,557.

2. That said bonds were issued without any legal warrant or authority, and are absolutely void, because there was an election held Nov. 7, 1871, whereat it was voted by the qualified electors of said township that it should subscribe $75,000 to the capital stock of the State Line, Oswego, and Southern Kansas Railroad Company, and issue its bonds in payment therefor; that said company, after said election and vote

of Nov. 7, 1871, became, by and under the laws of the State of Kansas, duly consolidated with another railroad company, and that by such consolidation a new corporation was constituted and formed, called the Memphis, Carthage, and North-western Railroad Company; that said township, after said consolidation, subscribed $75,000 to the stock of said new corporation and issued its bonds in payment therefor, a part of which are those in said petition mentioned; that no other vote was ever taken in said township for subscribing to the stock of said new corporation or to that of any other railroad company.

The plaintiff demurred to the answer, and on the following questions the judges were opposed in opinion: —

1. Whether or not it is a defence to this action by a *bona fide* holder of the interest coupons sued on for value and without notice, that the amount of bonds, to wit, $75,000, issued by the defendant, was in excess of the amounts prescribed by the acts of the legislature of Kansas, approved Feb. 25, 1870, and approved March 2, 1872, in relation to the assessed taxable property of the defendant at the times of voting and issuing said bonds.

2. Whether or not it is a defence to this action by a *bona fide* holder for value of the interest coupons sued on without actual notice, that after the order of the board of county commissioners for an election, and after a favorable vote by a three-fifths majority of the qualified electors of Salamanca Township, according to law, to subscribe stock in the State Line, Oswego, and Southern Kansas Railroad Company, payable in negotiable bonds, to aid in the construction of its railroad, the subscription of stock and the issue of bonds without any further election were made to the Memphis, Carthage, and Northwestern Railroad Company with which said prior company, in whose favor the vote was had, had become merged and consolidated under a law existing at the time of said election, to form a continuous line.

The demurrer was overruled, and final judgment rendered for the township.   Wilson sued out this writ of error.

*Mr. Joseph Shippen* for the plaintiff in error.

There was no opposing counsel.

Mr. Chief Justice Waite delivered the opinion of the court.

The first question certified is answered in the negative upon the authority of *Marcy* v. *Township of Oswego* (92 U. S. 637), decided in this court since the trial below.

The second question is likewise answered in the negative upon the authority of *County of Scotland* v. *Thomas* (94 id. 682), also decided here since the trial below. The power of the State Line, Oswego, and Southern Kansas Railroad Company to consolidate with other companies existed when the vote for subscription was taken in the township. When the consolidation took place there was a perfected power in the township to subscribe to the stock of that company, and there was also an existing privilege in the company to receive the subscription. That privilege, as we held in the Scotland County case, passed by the consolidation to the consolidated company.

The township trustee and the township clerk who made the subscription and issued the bonds in this case were the officially constituted authorities of the township, and when they subscribed to the stock and issued the bonds they acted in their official capacity as the legal representatives of the township, and not as mere agents. In this particular they occupied the position of the county court in the Scotland County case. They were to all intents and purposes the township in its corporate capacity. In *Harshman* v. *Bates County* (92 id. 569), the case was different. There the county court was the mere agent of a corporation, with which it had no official connection. The difference between the two cases is precisely that between a principal and an agent, and it is so expressly said in the Scotland County case. In the one case the corporation is bound if the action of the officers is within their corporate powers, while in the other the action must be within the corporate powers delegated to the agent.

The judgment of the Circuit Court will be reversed, and the cause remanded for such further proceedings, not inconsistent with this opinion, as may appear to be necessary; and it is

*So ordered.*