## MARCY *v.* TOWNSHIP OF OSWEGO.

1. An act of the legislature of Kansas of Feb. 25, 1870, provides, that whenever fifty of the qualified voters, being freeholders of any municipal township in any county, shall petition the board of county commissioners of such county to submit to the qualified voters of the township a proposition to take stock in any railroad proposed to be constructed into or through such township, and shall designate in the petition the railroad company, and the amount of stock proposed to be taken, it shall be the duty of the board to cause an election to be held, to determine whether such subscription shall be made; provided, that the amount of bonds voted shall not be above such a sum as will require a levy of more than one per cent per annum on the taxable property of the township, to pay the yearly interest on the amount of bonds issued. In the event of the vote being favorable, the board of

county commissioners were to issue the bonds in the name of the township. The bonds in question here were regularly executed by the chairman of the board, and attested by the county-clerk and seal of the county. They recite that they are issued in accordance with said act, and in pursuance of the votes of three-fifths of the legal voters of the township at a special election duly held. *Held,* that, in a suit brought on some of the coupons by a *bona fide* holder for value, it cannot be shown as a defence to a recovery, that, at the time of voting and issuing the bonds, the value of the taxable property of the township was not in amount sufficient to authorize the voting and issuing of the whole series of them.

2. All prerequisite facts to the execution and issue of the bonds were, by the statute, referred to the board of county commissioners; and the plaintiff was not bound, when he purchased, to look beyond the legislative act and the recitals of the bonds.

ERROR to the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

*Mr. Alfred Ennis* and *Mr. A. L. Williams* for the plaintiff in error.

*Mr. Henry G. Webb, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

At the trial in the Circuit Court, the plaintiff proved by competent evidence that the bonds, coupons of which were declared upon, were part of a series of bonds for $100,000 voted and issued by the township, and that they were so voted and issued in strict compliance with an act of the legislature of the State, approved Feb. 25, 1870, unless they were voted and issued in excess of the amount authorized by the act. It became, therefore, a question whether, in this suit, brought by a *bona fide* holder for value to recover the amount of some of the coupons, it could be shown, as a defence to a recovery, that at the time of voting and issuing the series of bonds the value of the taxable property of the township was not in amount sufficient to authorize the voting and issuing of the whole series, amounting to $100,000.

To solve this question, there are some facts appearing in the case which it is necessary to consider. The bonds to which the coupons were attached contained the following recital: —

" This bond is executed and issued by virtue of and in accordance with an act of the legislature of the said State of Kansas,

entitled 'An Act to enable municipal townships to subscribe for stock in any railroad, and to provide for the payment of the same, approved Feb. 25, 1870,' and in pursuance of and in accordance with the vote of three-fifths of the legal voters of said township of Oswego, at a special election duly held on the seventeenth day of May, A.D. 1870."

Each bond also declared that the board of county commissioners of the county of Labette (of which county the township of Oswego is a part) had caused it to be issued in the name and in behalf of said township, and to be signed by the chairman of the said board of county commissioners, and attested by the county-clerk of the said county, under its seal. Accordingly, each bond was thus signed, attested, and sealed. Nor is this all. The bonds were registered in the office of the State auditor, and certified by him in accordance with the provisions of an act of the legislature. His certificate on the back of each bond declared that it had been regularly and legally issued, that the signatures thereto were genuine, and that it had been duly registered in accordance with the act of the legislature.

In view of these facts, and of the decisions heretofore made by this court, the first question certified to us cannot be considered an open one. We have recently reviewed the subject in *Town of Coloma* v. *Eaves, supra*, p. 484, and reasserted what had been decided before; namely, that where legislative authority has been given to a municipality to subscribe for the stock of a railroad company, and to issue municipal bonds in payment of the subscription, on the happening of some precedent contingency of fact, and where it may be gathered from the legislative enactment that the officers or persons designated to execute the bonds were invested with power to decide whether the contingency had happened, or whether the fact existed which was a necessary precedent to any subscription or issue of the bonds, their decision is final in a suit by the *bona fide* holder of the bonds against the municipality, and a recital in the bonds that the requirements of the legislative act have been complied with, is conclusive. And this is more emphatically true when the fact is one peculiarly within the knowledge of the persons to whom the power to issue the bonds has been conditionally granted.

Applying this settled rule to the present case, it is free from difficulty. The act of the legislature under which the bonds purport to have been issued was passed Feb. 25, 1870. Laws of Kansas, 1870, p. 189. The first section enacted that whenever fifty of the qualified voters, being freeholders, of any municipal township in any county should petition the board of county commissioners of such county to submit to the qualified voters of the township a proposition to take stock in the name of such township in any railroad proposed to be constructed into or through the township, designating in the petition, among other things, the amount of stock proposed to be taken, it should be the duty of the board to cause an election to be held in the township to determine whether such subscription should be made; provided, that the amount of bonds voted by any township should not be above such a sum as would require a levy of more than one per cent per annum on the taxable property of such township to pay the yearly interest.

The second section directed the board of county commissioners to make an order for holding the election contemplated in the preceding section, and to specify therein the amount of stock proposed to be subscribed, and also to prescribe the form of the ballots to be used.

The fifth section enacted that if three-fifths of the electors voting at such election should vote for the subscription, the board of county commissioners should order the county-clerk to make it in the name of the township, and should cause such bonds as might be required by the terms of the vote and subscription to be issued in the name of such township, to be signed by the chairman of the board and attested by the clerk, under the seal of the county.

These provisions of the legislative act make it evident not only that the county board was constituted the agent to execute the power granted, but that it was contemplated the board should determine whether the facts existed which, under the law, warranted the issue of the bonds. The board was to order the election, if certain facts existed, and only then. It was required to act, if fifty freeholders who were voters of the township petitioned for the election; if the petition set out the amount of stock proposed to be subscribed; if that amount

was not greater than the amount to which the township was limited by the act; if the petition designated the railroad company; if it pointed out the mode and terms of payment. Of course the board, and it only, was to decide whether these things precedent to the right to order an election were actual facts. No other tribunal could make the determination, and the members of the board had peculiar means of knowledge beyond what any other persons could have. Moreover, these decisions were to be made before they acted, not after the election and after the bonds had been issued.

The order for the election, then, involved a determination by the appointed authority that the petition for it was sufficiently signed by fifty freeholders who were voters; that the petition was such a one as was contemplated by the law; and that the amount proposed by it to be subscribed was not beyond the limit fixed by the legislature.

So, also, the subsequent issue of the bonds containing the recital above quoted, that they were issued " by virtue of and in accordance with " the legislative act, and in " pursuance of and in accordance with the vote of three-fifths of the legal voters of the township," was another determination not only of the result of the popular vote, but that all the facts existed which the statute required in order to justify the issue of the bonds.

It is to be observed that every prerequisite fact to the execution and issue of the bonds was of a nature that required examination and decision. The existence of sufficient taxable property to warrant the amount of the subscription and issue was no more essential to the exercise of the authority conferred upon the board of county commissioners than was the petition for the election, or the fact that fifty freeholders had signed, or that three-fifths of the legal voters had voted for, the subscription. These are all extrinsic facts, bearing not so much upon the authority vested in the board to issue the bonds, as upon the question whether that authority should be exercised. They are all, by the statute, referred to the inquiry and determination of the board, and they were all determined before the bonds and coupons came into the hands of the plaintiff. He was, therefore, not bound when he purchased to look beyond the act of the legislature and the recitals which the bonds contained. It

follows that the first question certified to us should be answered in the negative.

Such being our opinion respecting the first question certified, the second and third questions are immaterial, and they require no consideration.

*Judgment reversed, and new trial ordered.*

MR. JUSTICE MILLER, MR. JUSTICE DAVIS, and MR. JUSTICE FIELD, dissented.