## NINTH NAT. BANK *v.* KNOX COUNTY.

*(Circuit Court, E. D. Missouri, N. D.   September 11, 1888.)*

1. RAILROAD COMPANIES—MUNICIPAL AID—RECITAL IN BOND—ESTOPPEL.

A recital in a county bond, as follows: "This bond being issued under and pursuant to orders of the county court * * * for subscription to the stock of the Mo. & Miss. R. R. Co., as authorized by an act * * * entitled 'An act to incorporate the Mo. & Miss. R. R. Company, approved Feb. 20, 1865,'" does not estop the bondholder from showing that the bond was in fact issued under a general law, especially as the records of the county court showed that before the bonds were issued a vote was taken according to the general law; that the bond register and published statement of the county debt declared that the bonds had been issued under the general law; and that taxes to pay interest had been levied in violation of the special law, and according to the general law for a period of seven years.

2. SAME.

Such recital was not made as the basis of a contract about to be entered into, but was merely a general recital, not intended as a definite statement of matters of fact, on the faith of which the parties had contracted.

3. SAME—POWER OF COURT—SEVERAL LAWS—INSTRUCTIONS.

In an action on the bond, the jury were requested first to find whether the county court intended to act under the special law or the general law. An election had been held according to the general law, but, as the evidence showed that there had been some discussion before the county judge as to the legality of that election, and doubts excited as to the validity of a subscription under it, the jury were instructed to find that the bonds were issued under the general law, if the court in fact relied on both laws to support the subscription; that it was competent for the court to rely and act on both laws; and that it might invoke the aid of any law, supposed to confer power on the court to make the subscription. *Held,* that the instruction was not misleading.

4. SAME—ELECTIONS—VALIDITY OF ORDER.

An order submitting to the voters of a county a proposition to subscribe stock in aid of a railroad under the general railroad law of Missouri, need not specify the name of the corporation, where the proposition describes the proposed route of the road with the requisite certainty.

At Law.   On motion for new trial.

Action by the Ninth National Bank of New York on certain bonds and coupons issued by Knox county, Mo.   The recital referred to in the opinion was as follows:

"This bond being issued under and pursuant to orders of the county court * * * for subscription to the stock of the Mo. & Miss. R. R. Co., as authorized by an act * * * entitled 'An act to incorporate the Mo. & Miss. R. R. Company, approved Feb. 20, 1865.'"

The rate of taxation to pay the bonds, if issued under the special act, was one-twentieth of 1 per cent. annually, not sufficient to pay the annual interest; but, if issued under the general law, pursuant to a popular vote, the rate of taxation to pay the bonds was unlimited.   On the trial the jury were instructed by THAYER, J., as follows:

"The controversy, so far as you are concerned, arises over the question whether the bonds in suit were issued in pursuance of a power conferred on the county by the thirteenth section of charter of the Missouri & Mississippi R. R. Co., or by virtue of the seventeenth section of the general railroad law

of the state, which was in force on May 13, 1867, the day the county court ordered the issuance of the bonds. I will read you the two sections last referred to. Section 13 of the railroad charter is as follows: 'It shall be lawful for the corporate authorities of any city or town, the county court of any county desiring so to do, to subscribe to the capital stock of said company, and may issue bonds therefor, and levy a tax to pay the same, not to exceed 1-20 of 1 per cent. upon the assessed value of the taxable property for each year.' Section 17 of the general railroad law is in the following language: 'It shall be lawful for the county court of any county, the city council of any city, or the trustees of any incorporated town to take stock for such county, city, or town in, or loan the credit thereof to, any railroad company duly organized under this or any other law of the state, provided that two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent to such subscription.' You will observe, gentlemen, that here are two different statutes, under either one of which, or under both, the county court of Knox county might lawfully issue bonds in aid of the building of a railroad through the county. Acting under one statute, the county court could issue bonds of its own motion, without a popular vote; acting under the other, a vote of the people was necessary to validate the issue.

"Now, the main question which you must determine in this case is whether the county court of Knox county issued the bonds in suit pursuant to the power conferred on it by section 13 of the railroad charter, and without any reference to a popular vote, or whether the court issued the bonds in obedience to a popular vote, and because more than two-thirds of those voting on the proposition favored an issuance of bonds. If the evidence in this case satisfies you that in issuing the bonds now sued on the county court of Knox county intended to and did act solely in pursuance of the power conferred on it by the thirteenth section of the railroad charter, which I have read to you, and without reference to any authority conferred by a vote of the people, then you will answer the first question submitted to you in the affirmative, and you will answer the second question in the negative, and you may, in that event, answer the third and fourth interrogatories according as you find the fact to be. The questions submitted to you are as follows: '*First.* Were the bonds sued upon in this case issued by the county court of Knox county solely in pursuance of power conferred by the thirteenth section of the Missouri & Mississippi Railroad charter? *Second.* In issuing the bonds sued upon, did the county court of Knox county intend to issue the same pursuant to power conferred by section 17 of the general railroad law in force on May 13, 1867, and in accordance with a vote of the people of Knox county, authorizing such issue? *Third.* Was an election held in Knox county, Mo., previous to the issue of the bonds in suit, to authorize a subscription of one hundred thousand dollars to the stock of a railroad corporation running on the line of the Missouri & Mississippi Railroad, as projected? *Fourth.* Did two-thirds of the persons voting at such election vote in favor of such subscription, and the issuance of bonds to pay for the same?' On the other hand, if you find that the proposition embraced in the two orders of the county court of Knox county of date February 6, 1867, and March 4, 1867, was submitted to the voters of the county at an election held for that purpose; that more than two-thirds of all those voting at such election voted in favor of the proposition; and if you find that the county court subscribed to stock in the Missouri & Mississippi Railroad Company, and issued the bonds in suit in pursuance of power conferred by such vote; and that the projected route of said railroad was on either line or route mentioned in said orders,—then you will answer question No. 1 in the negative, and questions Nos. 2, 3, and 4 in the affirmative. In this connection I will further add, gentlemen, that if you find from the evidence that in

issuing the bonds in suit the county court acted both in pursuance of power conferred by the railroad charter in question, and also in reliance upon a popular vote previously taken, whereat more than two-thirds of those voting favored a subscription, and the issuance of bonds to pay for the same, then in that event you will answer the first question in the negative, and the second, third, and fourth questions in the affirmative. It was competent for the county court to rely and act on both the power conferred by the railroad charter, and upon power derived from the general railroad law, and a popular vote taken in pursuance of the same. Such action on the part of the county judges would not be inconsistent. They might well invoke the aid of any and all laws that were supposed to confer power on the county court to make the subscription in question, or that might confer such power; and if they did so act with reference to and relying upon both said laws, then, although the judges may have had doubts of the validity of the election, the issue of bonds was not made solely under the railroad charter, and you should answer the first question in the negative, and the second, third, and fourth questions in the affirmative, provided it also appears that an election was held as before stated, and that more than two-thirds of those voting thereat favored the subscription.

"In the course of the trial something has been said respecting the form and validity of the two orders of the county court of Knox county of date February 6 and March 4, 1867, which have been read in evidence, and which provided for the submission of a certain proposition to the voters of Knox county. With reference to the orders in question I will say that they are good and sufficient in law, although no particular railroad corporation is mentioned in such orders. If a proposition such as is contained in those orders was submitted to a vote of the people at an election called for that purpose, and more than two-thirds of all the persons voting at the election voted in favor of the proposition, then such vote was sufficient in law to authorize the county court to subscribe for stock in the Missouri & Mississippi Railroad, and to issue the bonds of the county in payment therefor, provided the route of the Missouri & Mississippi Railroad passed through Knox county on either line indicated in said order; that is to say, gentlemen, it was competent for the people of the county to give the county court a general power to subscribe to the stock of any railroad that might construct a railroad through the county on either one of several prescribed routes. It was not necessary that the name of the corporation in which it was proposed to subscribe stock should be specified in the proposition submitted to the voters, and the fact that it was not specified does not impair the validity of the orders, and it does not impair the validity of any action which the county court may have taken on the faith of an election held under the same."

The jury answered the first question in the negative, and the second, third, and fourth questions in the affirmative, and returned a general verdict for the plaintiff.

Motion for a new trial filed.

*John B. Henderson,* for plaintiff.
*James Carr,* for defendant.

THAYER, J. The motion for a new trial is based on three grounds: (1) That the jury was misdirected; (2) that illegal testimony was admitted; (3) that the verdict was against the weight of testimony. The last proposition requires no extended notice. If the testimony on which the verdict rests was admissible, the court is satisfied with the findings of the jury. Whether illegal testimony was admitted depends, in my judgment, upon the effect that ought to be given to the recital contained

in the bonds on which the suit is founded. If the recital is in effect a declaration that the bonds were issued under power derived solely from the thirteenth section of the charter of the Missouri & Mississippi Railroad Company, and the recital is conclusive against the plaintiff, then unquestionably very much of the testimony, both for the plaintiff and defendant, was incompetent; but if the recital does not amount to an estoppel against the plaintiff, then all of the evidence to which an exception was taken, in my opinion, was competent. The inquiry under the pleadings being as to which of two laws the county court had acted under in issuing bonds, if the recital is not conclusive on that issue, it was, in my opinion, proper to admit in evidence the entry appearing on the bond register of the county, and also the official statements of the county debt published by authority of law. *Vide* section 30, art. 4, Wag. St. 1872, pp. 414, 415. It was also proper to permit the plaintiff to show under which of the two laws authorizing an issue of bonds the county court had proceeded in the matter of levying taxes to meet the interest on the bonded debt in question from the year 1868 to 1875. All of this testimony had a direct bearing on the issue, and, moreover, it was evidence against the county, made by its own officers in the discharge of duties imposed on them by law.

Recurring, then, to the question above stated, as to the effect of the recital in the bonds, it will suffice to say that, after an attentive consideration of the subject, I adhere to the opinion expressed at the trial, that the recital is not conclusive, and does not create an estoppel, at least against the plaintiff. My conclusion is based mainly on the following grounds:

*First.* The case may be distinguished from that class of cases in which it has been held that recitals in municipal bonds are conclusive against the municipality, in suits by innocent purchasers, if they recite the existence of facts on which the power to issue bonds depends, and the recitals are made by officers of the municipality who are authorized to determine and certify as to the existence of such facts. *Town of Coloma v. Eaves,* 92 U. S. 484; *Dixon Co. v. Field,* 111 U. S. 83, 4 Sup. Ct. Rep. 315; *Marcy v. Oswego,* 92 U. S. 638; *St. Joseph Tp. v. Rogers,* 16 Wall. 644; *Commissioners v. Bolles,* 94 U. S. 104; *Commissioners v. Clark,* Id. 287; *County of Warren v. Marcy,* 97 U. S. 104; *Pana v. Bowler,* 107 U. S. 539; 2 Sup. Ct. Rep. 704. The rule announced in these cases has for its object the protection of innocent purchasers of municipal bonds, who have bought on the faith of representations contained therein that certain antecedent steps, necessary to render the securities valid, have been taken. These cases enforce the doctrine that a person who has made representations as to material facts will not be allowed to dispute the facts represented, in a suit by a party who has acted on the representation. But in the case under consideration the recital related merely to the law under which the bonds sued upon had been issued; there being two laws, (one special and one general,) from either of which the requisite power might be derived. While the recital fairly implied that the county court had acted under the special law, yet there was no specific statement to that

effect, and the recital was not necessarily inconsistent with the view that it had acted under the general law. Furthermore, the records of the county court showed that before the bonds were issued a popular vote had been taken, as the general law required; the bond register and published statements of the county debt declared that the bonds had been issued under the general law; and taxes to pay interest on the same, for a period of years, had been levied in violation of the provisions of the special law, and in accordance with the general law. These were facts shown by the county records, to which purchasers of the bonds had access, and, moreover, they contradicted whatever inference arose from the recital contained in the bonds. In the respects thus noted, the case differs from those above cited, and, in my judgment, is not controlled by the principle that underlies those decisions.

*Second.* The recital in question was not made as an introduction to, or as the basis of, a contract about to be entered into. It was a general recital in the body of the bond, and was not intended as a definite statement of matters of fact, with reference to and on the faith of which the parties had contracted. The recital, therefore, cannot be looked upon as in effect an agreement between the county and the bondholder to admit the facts recited, and as being for that reason conclusive. This, I think, is apparent from the form of the recital, and the relation it bears to the bond. Bigelow, Estop. (4th Ed.) pp. 358, 365–369, and cases cited; *Bowman* v. *Taylor*, 2 Adol. & E. 278.

*Third.* Furthermore, several decisions of the supreme court of the United States warrant the conclusion that a recital in a municipal bond, merely as to the act under which it was issued, is not conclusive against the bondholder. In the cases of *Commissioners* v. *January*, 94 U. S. 202, and *Anderson Co.* v. *Beal*, 113 U. S. 239, 5 Sup. Ct. Rep. 433, the bonds in each case contained a recital that they were issued under laws which in point of fact had been repealed before the bonds were issued. Nevertheless the bonds were supported, and a recovery thereon was allowed, because it appeared that they had been issued in substantial conformity with other laws that were in force when the securities were put in circulation. In the cases of *Crow* v. *Oxford*, 119 U. S. 215, 7 Sup. Ct. Rep. 180, and *Gilson* v. *Dayton*, 123 U. S. 59, 8 Sup. Ct. Rep. 66, the bonds involved contained recitals to the effect that they were issued under laws which, as it transpired, were not in force when the bonds were executed. An attempt was made by the bondholders to sustain the issue under laws that were in force, but the attempt failed;—the court holding that, inasmuch as the plaintiffs relied on laws not referred to in the bonds themselves, they were not aided by the recitals, and that it was incumbent on them to show substantial compliance with the provisions of the laws so invoked, which they had failed to do. In none of these cases was it intimated that a recital contained in a bond as to the act under which it was issued operates as an estoppel against the bondholder, and precludes him from contradicting the fact recited. On the contrary, the decisions in each instance proceed on the assumption that recitals of that nature are open to explanation, and that the truth may be shown by any com-

petent evidence, notwithstanding the recital. I so ruled at the trial, and still adhere to that view.

The last and most important question for consideration is whether the jury was misdirected. The special issues framed and submitted required the jury to determine whether the county court, in subscribing for stock in the Missouri & Mississippi Railroad Company, and in issuing bonds therefor, intended to exercise a power conferred on the court by the charter of the railroad company, and that power only, or to exercise the power conferred by a popular vote at an election held under the general railroad law. The county court had an undoubted right to act either under the special law, without a popular vote, or to act under the general law, by the terms of which an election was necessary. In point of fact an election had been held, by order of the county court, prior to the subscription, and the requisite majority had voted in favor of the subscription, as the records of the court showed. It will be seen, therefore, that the jury had to determine which of the two powers the county court intended to exercise at the time the subscription was made. The question at issue was one of intention. Now, it is undeniable that there was some oral testimony in the case tending to show that after the special election was held, and prior to the subscription, a discussion took place in the presence of the county judges as to the legality of the special election, and that doubts were excited, in the minds of some persons at least, as to the validity of a subscription made in obedience to the vote cast at such election. In view of this testimony and other facts in the case, it was possible, if not probable, that the jury might conclude that the county court was influenced in its action by both the general and the special law; that in point of fact it eventually acted on the theory that it would obey the public will expressed at the election; and that if for any reason the election should be held to be invalid, the subscription could at least be supported under the special law. It seemed to be necessary, therefore, in view of this phase of the testimony, to give the jury some directions applicable thereto to enable them to answer the special issues. The court accordingly directed the jury to find that the bonds were issued under the general law if it appeared that the county court relied on both the general and special law to support the subscription, and had been influenced in its action by the provisions of both laws. This direction was supplemented by the general statement that "it was competent for the county court to rely and act upon both laws," and that "it might well invoke the aid of any law that was supposed to confer power on the court to make the subscription." Under the circumstances, however, the latter statements could only have been understood as meaning that it was possible that the county court had been influenced in its action by both laws, and that the county judges might rightfully have been influenced by the consideration that power to make the subscription without a popular vote was conferred by the special law, and would support the subscription, even if the election held under the general law proved to be invalid. So far as I can see, there was nothing in the charge calculated to produce the impression on the mind of the jury that it was

immaterial whether the bonds had been issued under the general or special law. No such view was advanced by the court. On the contrary, the charge was carefully framed so as to require the jury to determine whether the subscription had been made solely in dependence upon the special law, or in obedience to a popular vote; and that part of the charge which is objected to was only intended to govern the action of the jurors in the event of their finding that the county judges had acted in reliance on both the general and special law, in the sense that the subscription would not have been made but for the existence of both laws. If the charge was erroneous, the error, in my opinion, consisted wholly in that part which authorized a finding that the bonds were issued in obedience to a popular vote, and under the general law, if the county court relied in part on the power so conferred, and intended to exercise it. That direction really implied that the county court after the election "might invoke the aid of both laws to support the subscription;" and that, if it did rely on both laws, that fact did not impair the right of the bondholder to insist that the subscription was made under the general law, inasmuch as the election held to authorize the subscription was a valid election. Such thought as I have been able to give to the subject since the trial does not satisfy me that the direction so given was erroneous. As the county court at the time the subscription was made in fact had power by virtue of an antecedent popular vote to make the subscription under the general railroad law, I think it is questionable whether any inquiry at this time as to intentions of the county court is permissible, in view of the action of county authorities for a period of years in treating the bonds as issued under the general law, and in publishing that fact to the world in the manner before indicated. But be this as it may, it appears to me that if there was an actual intent to invoke as far as it would extend, or to any extent, the power conferred by a popular vote at an election lawfully held, the bonds may be rightfully said to have been issued under the general law, notwithstanding the fact that the existence of the special law may also have had some influence on the court's action.

In conclusion I will add that the view which the court took, and expressed in its charge, of the validity of the order of the county court under which the election to authorize the subscription was held, is supported by the following decisions: *Commissioners* v. *Thayer*, 94 U. S. 631; *Block* v. *Commissioners*, 99 U. S. 698. In each case it was held, under a law very similar to the law which prevailed in this state when the election in question was called, that an order submitting to the voters of a county a proposition to subscribe stock in aid of a railroad, need not specify the name of the corporation if the proposition describes the proposed route of the road with the requisite certainty. As this case was submitted to the jury with directions as to the questions of law involved that in my judgment were substantially correct, I shall overrule the motion for a new trial. It is so ordered.