JOSEPH R. WEBSTER, ADMINISTRATOR, v. CITY OF HASTINGS.

FILED JANUARY 3, 1900.   No. 10,935.

59  563
60  338
60  427
60  746
60  748

1. **Statutes:** AUTHENTICATION: EVIDENCE. The due authentication and enrollment of a statute affords only *prima facie* evidence of its passage.

2. ———: EVIDENCE OF ENACTMENT: JOURNALS. The legislative jour-

nals may be examined for the purpose of ascertaining whether a measure was enacted in the mode prescribed by the constitution.

3. ——: ——: ——. If the entries found in the legislative journals explicitly and unequivocally contradict the evidence furnished by the enrolled bill, the former will prevail.

4. ——: ——: ——. The legislative journals, kept in obedience to the command of the constitution, are the best evidence of what affirmatively appears in them regarding the enactment of a law.

5. ——: SUBJECTS AND TITLES OF BILLS. The provision of section 11, article 3, of the constitution, that "No bill shall contain more than one subject, and the same shall be clearly expressed in its title," is intended to prevent surreptitious legislation, and forbids amendatory legislation foreign to the subject of the original act, and which would not be embraced in the title thereof.

6. ——: AMENDMENT OF CITY CHARTER. Chapter 14, Session Laws of 1885, is void as amendatory legislation not covered by the title of the original act.

7. Action for Personal Injuries: ABATEMENT. A pending action for personal injuries does not abate by the death of the plaintiff.

ERROR from the district court of Kearney county. Tried below before BEALL, J. *Reversed.*

*Joseph R. Webster* and *Halleck F. Rose,* for plaintiff in error:

The legislature has no power to change the scope or effect of prior legislation by amending the title of an act passed by a former legislative assembly. See *People v. McCallum,* 1 Nebr., 182; *State v. Stewart,* 52 Nebr., 243; *Ballou v. Black,* 17 Nebr., 391.

No act with the title "An act to amend the title and sections one (1), two (2), three (3), and four (4) [of chapter sixteen (16)] of an act entitled 'An act to provide for organization, government, and powers of cities of the second class having over ten [or two] thousand inhabitants,' approved March 1st, 1883," ever passed either house of the legislature, and therefore there is no such a law. See *State v. McLelland,* 18 Nebr., 236; *State v. Robinson,* 20 Nebr., 96; *State v. Liedtke,* 9 Nebr., 462; *In re Groff,* 21 Nebr., 647.

The purpose of the act of 1885 was to provide for organization of cities of population between 5,000 and 10,000—a subject not expressed by the title. The act is, therefore, void. See *Sheasley v. Keens*, 48 Nebr., 64; *State v. Board of County Commissioners*, 47 Nebr., 428; *Weigel v. City of Hastings*, 29 Nebr., 384; *Touzalin v. City of Omaha*, 25 Nebr., 817; *State v. Tibbets*, 52 Nebr., 228; *Douglas County v. Hayes*, 52 Nebr., 191.

The new matter introduced by amendment is not germane to the act amended, and is inconsistent with the title of the act. See *State v. Lancaster County*, 6 Nebr., 484; *Burlington & M. R. R. Co. v. Saunders County*, 9 Nebr., 511; *Ex parte Thomason*, 16 Nebr., 238; *Holmburg v. Hauck*, 16 Nebr., 340; *State v. Pierce County*, 10 Nebr., 477; *Miller v. Hurford*, 11 Nebr., 381.

The amending act of March 5, 1885, under which defendant claims its corporate powers, is not complete in itself, and is in conflict with the act of March 1, 1879, which is not amended or repealed. It is, therefore, unconstitutional. See *State v. Board of Commissioners*, 47 Nebr., 438; *State v. Cobb*, 44 Nebr., 438; *In re House Roll 284*, 31 Nebr., 509; *State v. Corner*, 22 Nebr., 272; *Smails v. White*, 4 Nebr., 357; *Sovereign v. State*, 7 Nebr., 413.

*L. J. Capps* and *John C. Stevens, contra:*

In arguing that the act is constitutional, reference was made to the following cases: *Miller v. Hurford*, 13 Nebr., 14; *State v. Ream*, 16 Nebr., 681; *State v. Abbott*, 80 N. W. Rep., 499; *Lane v. Harris*, 16 Ga., 217; *Leland v. Wilkinson*, 6 Pet. [U. S.], 317; *Albrittin v. Huntsville*, 60 Ala., 486; *Payne v. Treadwell*, 16 Cal., 221; *Wetumpka v. Wetumpka Wharf Co.*, 63 Ala., 611; *Montgomery v. Hughes*, 65 Ala., 201; *State v. Murfreesborough*, 11 Humph. [Tenn.], 217; *Beasley v. Beckley*, 28 W. Va., 81; *Sipe v. Holliday*, 62 Ind., 4; *Town of Albion v. Hetrick*, 90 Ind., 545; *Bellmont v. Morrill*, 69 Me., 314; *People v. Mahaney*, 13 Mich., 481; *Board of Commissioners v. Heenan*, 2 Minn., 336; *State v. Clare*, 5 Ia., 509; *Dawdee v. State*, 58 Ind., 333; *Girard v. Philadelphia*, 7 Wall. [U. S.], 1.

Foxworthy's death abated the action. See *Burlington & M. R. R. Co. v. Crockett*, 17 Nebr., 570; *Mobile Life Ins. Co. v. Brame*, 95 U. S., 759; *Lawrence v. Martin*, 22 Cal., 173; *Comegys v. Vasse*, 1 Pet. [U. S.], 193; *Indianapolis & St. L. R. Co. v. Stout*, 53 Ind., 143; *McCurley v. McCurley*, 60 Md.. 185; *Russell v. Sunbury*, 37 O. St., 372.

SULLIVAN, J.

This case, after having experienced more than the ordinary vicissitudes of litigation, has now practically reached the end of its changeful career. At the last trial in the district court the jury found that Foxworthy had been injured through the culpable omission of the city of Hastings to keep its streets free from obstructions and fit for use. There was a general verdict fixing the amount of plaintiff's recovery at the sum of $4,734.16, and a special finding to the effect that there was no legal excuse for Foxworthy's failure to file his claim for damages with the city clerk within six months from the date of the accident. The court denied plaintiff's motion for judgment on the verdict, and, on the assumption that the special finding was inconsistent with the general verdict, gave judgment for the defendant. It is alleged in the petition in error, and argued by counsel for plaintiff, that there was no law requiring Foxworthy to file his claim for damages with the city clerk, and that the special finding of the jury is, therefore, without controlling force and altogether immaterial. The question thus raised is the constitutionality of chapter 14 of the Session Laws of 1885. The legislature, in 1883, passed an act entitled "An act to provide for the organization, government and powers of cities of the second class having more than ten thousand inhabitants." The first section of the act declared (Session Laws. 1883, ch. 16): "That all cities in this state having more than ten thousand, and less than twenty-five thousand, inhabitants shall be governed by the provisions of this act." Section 34 of the act of 1883, as amended by chapter 15 of the Session Laws of 1885, re-

quired notice of claims for damages, resulting from personal injuries, to be filed with the city clerk within six months from the time such injuries were sustained. Chapter 14 of the Session Laws of 1885, as enrolled and signed by the governor, was entitled "An act to amend the title and sections 1, 2, 3, and 4 of an act entitled: 'An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants,' approved March 1st, 1883." The first section assumes to amend the title of the original act so as to read: "An act to provide for the organization, government, and powers of cities of the second class having more than five thousand inhabitants." The second section purports to amend section 1 of the original act so as to read: "That all cities of the second class having more than five (5,000) thousand inhabitants and less than twenty-five (25,000) thousand inhabitants shall be governed by the provisions of this act." Foxworthy was injured in 1886, so that, if the amendatory act last mentioned is valid, he can not recover; but if the act is void, there was no law requiring notice, and the finding of the jury upon that subject presents no legal obstacle to a judgment on the verdict.

One of the contentions of counsel for the plaintiff is that the act in question is void, because its present title is substantially different from the title under which it passed the legislature. Without giving in detail the history of the measure as disclosed by the legislative journals, and taking no account of an obvious, clerical mistake, it may be said that the bill, during its entire progress through the house and senate, and up to the time of its enrollment, was invariably designated and referred to as "A bill for an act to amend sections one (1), two (2), three (3), and four (4) of chapter sixteen (16) of 'an act entitled an act to provide for the organization, government and powers of cities of the second class having more than ten thousand inhabitants,' approved March 1, 1883." The present title of the act, namely, "An act to amend

the title and sections one (1), two (2), three (3), and four
(4) of an act entitled 'an act to provide for the organiza-
tion, government and powers of cities of the second class
having more than ten thousand inhabitants, approved
March 1, 1883,'" is first mentioned in the report of the
house committee on engrossed and enrolled bills an-
nouncing the enrollment of the measure. That the title·
was changed by inserting therein the words "the title
and" after the bill had passed the legislature, and while
it was being prepared for the signature of the executive,
is a conclusion that can not be avoided without disre-
garding entirely the evidence of the legislative journals.
This, under what is now the settled doctrine of this court,
we can not do. The rule established by our former de-
cisions is that the due authentication and enrollment of
a statute affords only *prima facie* evidence of its passage;
and that the legislative journals may be examined for
the purpose of ascertaining whether the measure was
enacted in the mode prescribed by the constitution. If
the entries found in the journals explicitly and unequivo-
cally contradict the evidence furnished by the enrolled
bill, the former will prevail. The journals, being the
records of legislative proceedings kept in obedience to
the command of the constitution, are considered the best
evidence of what affirmatively appears in them regarding
the enactment of laws. See *State v. McLelland,* 18 Nebr.,
236; *In re Granger,* 56 Nebr., 260; *State v. Francis,* 26
Kan., 724; *Illinois C. R. Co. v. People,* 143 Ill., 434; *Mera-
cle v. Down,* 64 Wis., 323; *State v. Platt,* 2 S. Car., 150; *Os-
burn v. Staley,* 5 W. Va., 85; *People v. Mahaney,* 13 Mich.,
481; *Spangler v. Jacoby,* 14 Ill., 297; *People v. Starne,* 35
Ill., 121.

As the original and only legitimate title of chapter 14
of the Session Laws of 1885 was clearly not broad enough
to cover legislation amending the title to chapter 16 of
the Session Laws of 1883, we shall, in the further con-
sideration of this case, deal with the former act under
its proper title—the title by which it became known

during its passage through both branches of the legis-
lature.   Leaving out of view, then, the spurious portion
of the title, and the first section of the act, the question
for determination is this, was it competent for the legis-
lature to make the provisions of an act entitled "An act
to provide for the organization, government and powers
of cities of the second class having more than ten thou-
sand inhabitants," applicable to cities having less than
ten thousand inhabitants by an enactment, the object of
which, as expressed in the title, was to amend the first
four sections of the original law?   To prevent surrepti-
tious legislation the constitution declares: "No bill shall
contain more than one subject, and the same shall be
clearly expressed in its title."   See Constitution, art. 3,
sec. 11.   This provision of the supreme law forbids amend-
atory legislation which is foreign to the subject of the
original act, and which would not be embraced within
the title thereof.   If the amendatory law might have been
made a part of the original act at the time it was passed,
it is valid; otherwise, it is not.   "Whatever might have
been enacted under the title of the former statute, and
nothing more beyond it," says LAKE, J., in *Burlington &
M. R. R. Co. v. Saunders County*, 9 Nebr., 507, "could
rightly be included in the amendatory act."   A like ex-
pression is found in *State v. Pierce County*, 10 Nebr., 476.
And to the same effect are *People v. Gadway*, 61 Mich., 285,
and *Roby v. Sheppard*, 42 W. Va., 286.   It would hardly
be contended, in view of the decisions here and elsewhere,
that an original act which, according to its title, related
exclusively to cities having more than ten thousand in-
habitants, might embrace legislation affecting cities hav-
ing less than ten thousand inhabitants.   See *Sheasley v.
Keens*, 48 Nebr., 57; *State v. Board of County Commission-
ers*, 47 Nebr., 428; *Weigel v. Hastings*, 29 Nebr., 379;
*Touzalin v. Omaha*, 25 Nebr., 817; *State v. Tibbets*, 52 Nebr.,
228; *Adams v. San Angelo W. W. Co.*, 86 Tex., 485; *State
v. Trenton*, 53 N. J. Law, 566; *Shelton v. State*, 96 Tenn.,
521.   The restrictive title would, in such case, clearly ex-

clude from the operation of the law all cities having a population of less than ten thousand. And it is equally clear that an act purporting merely to amend such a law would furnish no indication that the amendatory legislation was dealing with a different class of cities. For these reasons we conclude that the act of 1883 was not applicable to the city of Hastings, and that Foxworthy was, therefore, under no legal obligation to file notice with the city clerk of his claim for damages.

Another question discussed at some length and with much ingenuity, in the brief of counsel for the defendant, relates to the power of the court to revive the action in the name of Webster, as administrator of Foxworthy's estate. Without stopping to inquire whether that point is properly presented by the record before us, we will say that, in our opinion, section 455 of the Code of Civil Procedure leaves no room to doubt the right of the plaintiff, in his representative capacity, to prosecute the action to judgment. The section referred to is as follows: "Sec. 455. No action pending in any court shall abate by the death of either or both the parties thereto, except an action for libel, slander, malicious prosecution, assault, or assault and battery, for a nuisance, or against a justice of the peace for misconduct in office; which shall abate by the death of the defendant." Foxworthy had a right of action against the defendant for a personal injury occasioned by the city's negligent omission of duty. He had, at the time of his death, a suit pending for the enforcement of that right. The section quoted declares, in plain terms, that suits instituted to redress a particular class of wrongs, among them being certain injuries to the person and reputation, shall abate by the death of the defendant; but that no other pending action shall abate for any cause. The language employed by the legislature is so clear that it requires no construction. The meaning of the law, as applied to this case, would not be more evident had it said in so many words that an action for a personal injury caused by the negligence of the

defendant shall not abate by the death of the plaintiff. To sustain the contention of counsel for the city, that the death of a party abates all pending actions except those brought for the vindication of some right covered by the provisions of section 454 of the Code, would be to annul completely the provisions of section 455.

As a result of the conclusions reached upon the questions considered, the judgment in favor of the city is reversed, and the cause remanded, with direction to the district court to render judgment on the general verdict in favor of the plaintiff for $4,734.16, and costs.

REVERSED AND REMANDED.