## CITY OF BEATRICE, NEB., v. EDMINSON.

(Circuit court of Appeals, Eighth Circuit. August 25, 1902.)

### No. 1,726.

**1. EVIDENCE—LAWS OF STATES—PRINTED STATUTES.**
Printed copies of the statute laws of Nebraska, purporting to be published under its authority, are prima facie evidence of the passage and existence of the laws there published, in the courts of the United States and of the state of Nebraska. Comp. St. Neb. 1899, § 5993; Rev. St. §§ 721, 905.

**2. CONSTITUTIONALITY OF STATUTE.**
Chapter 14 of the Laws of Nebraska of 1885 is not unconstitutional, and its title is not obnoxious to section 11, art. 3, of the constitution of Nebraska.

**3. SAME.**
Webster v. City of Hastings, 81 N. W. 510, 59 Neb. 563, which holds this chapter unconstitutional, is conclusive or controlling upon no court or party, except the parties to that action and their privies, in the absence of proof of the fact, established in that case, that the title of chapter 14 of the Laws of Nebraska of 1885, when it passed the legislature, differed from the title of that act published by authority of the state in the Session Laws of 1885.

**4. STATE CONSTITUTION—CONSTRUCTION BY STATE COURT—EFFECT IN FEDERAL COURTS.**
The federal courts uniformly follow the construction of the constitution and statutes of a state announced by its highest judicial tribunal in all cases that involve no question of general or commercial law and no question of right under the constitution and laws of the nation.

**5. SAME—EFFECT OF FINDING OF FACT.**
But the finding by a state court of the terms of a statute or of its title held unconstitutional is not conclusive or controlling upon a federal court in an action between other parties.

**6. MUNICIPAL BONDS—POWER TO ISSUE—RECITAL OF WRONG STATUTE—IMMATERIALITY.**
Where the power to issue municipal bonds has been vested in a city by appropriate legislation, a recital in the face of the bonds of a statute which does not grant the authority is not fatal to the securities or material to the issue of their validity.

**7. MUNICIPAL BONDS—RECITALS—EXCESSIVE INDEBTEDNESS—ESTOPPEL OF CITY.**
Recitals in municipal bonds which import an issue in accordance with the terms of the law or constitution which contains the limitation of indebtedness will estop the municipality from defeating the bonds on the ground that its debt exceeded the prescribed limitation, where the recitals were made by municipal officers in whom the power was vested and upon whom the duty was imposed of determining whether or not the limitation was exceeded before they issued the bonds, and where no notice of the fact of the excessive indebtedness was given to the buyer

---

¶ 4. State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

by the face of the bonds or by any public record which was prescribed by the constitution or by the act under which the securities were issued, as a test of the limitation.

**8. SAME—DEFECT IN ELECTION.**

Recitals in municipal bonds by officers empowered to determine and certify the fact that a proposition to issue the bonds was duly submitted and sustained by a favorable vote of the electors, and that all precedent conditions to the lawful issue of- the bonds were complied with, will estop a municipality, as against an innocent purchaser, from defeating the bonds because the proposition actually submitted failed to contain a required provision authorizing an annual levy to pay the principal of the bonded debt.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Nebraska.

William C. Dorsey (Robert S. Bibb and Samuel Rinaker, on the brief), for plaintiff in error.

John L. Webster (L. C. Krauthoff, on the brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. This writ of error challenges a judgment against the city of Beatrice in the state of Nebraska upon coupons cut from two series of bonds of $1,000 each issued by that city, one series of 80 bonds dated on March 9, 1886, and another series of 35 bonds dated November 2, 1891. The case was tried by the court without a jury, and all the issues of fact were found against the city and in favor of the plaintiff below. This plaintiff was a bona fide purchaser of the bonds without notice of any defects or defenses with which he was not charged by the statutes of the state of Nebraska. The bonds of the first series contained a recital that they were issued for the purpose of constructing, maintaining, and operating a system of waterworks for the city in pursuance of and by authority of an act of the legislature of the state of Nebraska authorizing cities of over 5,000 inhabitants to construct, maintain, and operate a system of waterworks, and that the mayor and council, being vested with authority for that purpose, had found that all the requirements of law and conditions precedent and necessary to authorize the issue, negotiation, and delivery of the bonds had been fully complied with. The second series contained a recital that they were issued for the same purpose "under and by virtue of section 66 of an act of the legislature of the state of Nebraska, as now amended, entitled 'An act to provide for the organization, government, and powers of cities of the second class having more than five thousand inhabitants,' approved March 1, 1883, and the title to which was amended March 5, 1885, so as to read as above set out, said section being section 66 of article 2 of chapter 14 of the Compiled Statutes for the year of 1887," that a proposition to issue the bonds had been submitted to, and a favorable vote secured from, the electors, that the amount of the bonds was within the limit

¶ 8. Bona fide purchasers of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.

of bonded indebtedness which the mayor and common council were empowered to contract, and that they were authorized to borrow the sum of $35,000 and to pledge the property and credit of the city by its negotiable bonds for the repayment of this money.

It will be seen that these recitals refer to the act for the government of cities of the second class having more than 5,000 inhabitants. The chief complaint of counsel for the city is that there never was any such act, and hence that there never was any power in this city, which contained a population of more than 5,000 and less than 10,000 inhabitants, to issue any of these bonds. This complaint is founded on the contention that the amendatory act of March 5, 1885, which constitutes chapter 14 of the Session Laws of the State of Nebraska for the year 1885, is unconstitutional and void, and that contention grows out of this state of facts: In the year 1883 the legislature of the state of Nebraska passed an act entitled "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants." By this act it empowered any city having more than 10,000 and less than 25,000 inhabitants to issue its negotiable bonds to an amount not exceeding $100,000 for the purpose of constructing, maintaining, and operating waterworks. Sess. Laws Neb. 1883, c. 16, § 66. In the year 1885 the legislature of that state passed the act of March 5, 1885, which is the principal subject of controversy in this action. That act provided that the title of the act of 1883 should be so amended as to read, "An act to provide for the organization, government, and powers of cities of the second class having more than five thousand inhabitants"; that section 1 of the act of 1883 should read in substance that all cities of the second class having more than 5,000 and less than 25,000 inhabitants should be governed by the provisions of this act; and that other amendments should be made therein not material to the present issue. Sess. Laws 1885, c. 14. The legal effect of these amendments, if valid, was to confer upon the city of Beatrice, and upon all cities which had more than 5,000 and less than 10,000 inhabitants, the powers previously conferred upon cities of more than 10,000 and less than 25,000 inhabitants by the original act of 1883. The act of 1883 was treated as amended by this act of 1885, and the act so amended was carried forward into the Compiled Statutes of the state under its amended title, and the city of Beatrice proceeded to issue these bonds under this amended act. Comp. St. Neb. 1887, c. 14, art. 2; Comp. St. Neb. 1889, c. 14, art. 2. In the year 1891 the legislature of Nebraska passed another amendatory act, which by its terms changed section 66, art. 2, c. 14, of the Compiled Statutes of 1889, which was the same section numbered 66 in the original act of 1883 and in the amended act of 1885, so that this section empowered cities subject to its terms to issue bonds for waterworks in an amount not exceeding $125,000, instead of $100,000.

It is not claimed that these statutes did not confer plenary power upon this city to issue the bonds and coupons here in question if the statutes ever became applicable to a city of less than 10,000 inhabitants. But it is insisted that the existence in the city of Beatrice of the power to issue these bonds is entirely dependent upon the validity

of the act of March 5, 1885, which alone undertook to extend to cities of more than 5,000 and less than 10,000 inhabitants the powers vested by the act of 1883 in cities of more than 10,000 inhabitants, and it is earnestly and persistently argued that the act of 1885 is unconstitutional and void. Thus it will be seen that the sole basis of the contention that this city was without authority to issue these bonds and coupons is the claim that the act of 1885 is unconstitutional. If that position is unsound, the entire argument fails, and the power of the city to issue the bonds is not denied. What, then, is the support of this proposition? It is the decision of the supreme court of the state of Nebraska in Webster v. City of Hastings, 59 Neb. 563, 81 N. W. 510, and that alone. It is insisted that that decision declares the unconstitutionality of this act, and then the familiar rule is invoked that the national courts uniformly follow the construction of the constitution and statutes of a state announced by its highest judicial tribunal in all cases that involve no question of general or commercial law and no question of right under the constitution and laws of the nation. Madden v. Lancaster Co., 65 Fed. 188, 192, 12 C. C. A. 566, 570; Clapp v. Otoe Co., 104 Fed. 473, 477, 45 C. C. A. 579, 582. But is the judgment in Webster v. City of Hastings conclusive or controlling upon the issue of the constitutionality of this act? We turn to the opinion in that case to learn the issues involved and the effect of the decision there rendered.

The provision of the constitution of the state of Nebraska to which the act of 1885 is alleged to be obnoxious is that "no bill shall contain more than one subject and the same shall be clearly expressed in its title." Article 3, § 11. The printed copies of the statute laws of the state of Nebraska purporting to be published under the authority of that state are prima facie evidence of the passage and existence of the laws thus printed in all the courts of the United States and of the state of Nebraska. Comp. St. 1899, § 5993; Rev. St. §§ 721, 905. The journals of the senate and house of that state are evidence of the proceedings of those bodies. Comp. St. 1899, § 5992. The courts of Nebraska have adopted the rule that the authentication and enrollment of a statute, or, in other words, the printed copy of it published by authority of the state, is prima facie evidence of its passage and existence as there published, but that this evidence may be overcome by entries in the journals of the senate and house which explicitly contradict it. Webster v. City of Hastings, 59 Neb. 563, 568, 81 N. W. 510, and cases there cited. Now, in the printed copies of the statutes of the state of Nebraska, purporting to be published by its authority, which contain the act of March 5, 1885, here in question, the title to that act reads: "An act to amend the title and sections 1, 2, 3 and 4 of an act entitled 'An act to provide for the organization, government and powers of cities of the second class having more than ten thousand inhabitants,' approved March 1, 1883." Sess. Laws 1885, c. 14. That title is not obnoxious to the provisions of section 11, art. 3, of the constitution of Nebraska, but it sufficiently complies with the terms of that section. It clearly and plainly expresses the entire subject treated by the act, the amendment of the title and of the act itself relative to the organization and government of cities of the second class, and

the bill treats of but one subject, the subject expressed in the title. No court has ever held, so far as we are advised, and the supreme court of Nebraska did not decide in Webster v. City of Hastings, that this title was defective, or that the title or the act passed under it was unconstitutional or invalid. The question determined in Webster v. City of Hastings was other and different. In that case the prima facie evidence of the authentication, enrollment, and publication by authority of the state of this act and its title was overcome either by the admission or by the proof that the entries in the journals of the two houses disclosed the fact that the words "the title and" were not contained in the title to this act when it passed the senate or the house, and that they had been surreptitiously inserted after its passage and before its enrollment. The decision in Webster v. City of Hastings is founded upon this fact, and it simply holds that the title of this act of 1885, without these words, failed to give fair warning that the proposed amendments which it contained would change the title of the original act, as well as its body, so that it would apply to other cities than those having more than 10,000 and less than 25,000 inhabitants. But this basic fact upon which that decision stands was neither pleaded, proved, nor found in the case in hand. The entries in the journals of the legislative bodies in Nebraska were not presented to the court below or to this court, and the prima facie evidence of the printed statute laws, published by authority of the state of Nebraska, that the title to this act contained the essential words "the title and" when it passed the legislature of that state, stands uncontradicted and unassailed in this case, while it is supported by the express finding of the court below that the city of Beatrice had the power to issue these bonds and their coupons to an amount not exceeding $125,000.

It is only when the legal conclusion of a state court relative to the constitutionality of a statute of its state is based upon the same facts, upon the same statute, that it controls the decision of the federal courts upon that question. The determination of the issues of fact which conditioned the terms and passage of a statute, like the finding of any other issue of fact, concludes no one, either in a state or in a federal court, except the parties to the action in which the decision is rendered and their privies. And the finding of the supreme court of Nebraska, in Webster v. City of Hastings, that the words "the title and" were not contained in the title of the amendatory act of 1885 when it was passed, and its legal conclusion that the title without those words was unconstitutional estopped no court and no party but Webster, the city of Hastings, and their privies, from again litigating the questions there decided. In the case at bar the evidence and the finding are to the effect that the words "the title and" were contained in the title to the amendatory act of 1885 when it was passed. That title clearly expressed the subject of the act, the act was constitutional and valid, and the city of Beatrice had plenary power to issue all the bonds and coupons here in controversy when she sent them forth.

Moreover, these bonds and coupons would not have been invalid in the hands of innocent purchasers if the amendatory act of 1885 had not been valid. In that case the city of Beatrice would have been governed by the act of 1879 (Sess. Laws 1879, p. 193), as amended by

Sess. Laws 1881, pp. 163, 168, 177, and by Sess. Laws 1885, pp. 162, 167, 168. This act governs cities of more than 1,500 and less than 25,000 inhabitants which were not governed by the act cited in the earlier part of this opinion. It empowered these cities to issue negotiable bonds to an amount not exceeding $100,000. Sess. Laws 1885, pp. 167, 168. There was ample authority here for the city of Beatrice to issue these bonds, and the fact that the recitals in them referred to other statutes was not material. If there was any law which authorized the mayor and council to issue the bonds and coupons, they were valid, and the recitals that they were emitted by virtue of other statutes which gave no such authority could not devest the municipality and its officers of the power with which the legislature had endowed them, nor invalidate their lawful exercise of that power. Commissioners v. January, 94 U. S. 202, 206, 24 L. Ed. 110; Ninth Nat. Bank v. Knox Co. (C. C.) 37 Fed. 75, 79; Board v. De Kay, 148 U. S. 591, 595, 596, 13 Sup. Ct. 706, 37 L. Ed. 573; Knox Co. v. Ninth Nat. Bank, 147 U. S. 91, 95, 13 Sup. Ct. 267, 37 L. Ed. 93.

It is contended, however, that the amended act of 1879 did not authorize the issue of the second series of bonds for $35,000, for the reason that they increased the amount of bonds emitted by this city for waterworks to the sum of $125,000, which was $25,000 above the limit fixed by that act. The answer is that recitals in the face of bonds made by officers of municipal or quasi municipal corporations in whom the power is vested and upon whom the duty is imposed of determining whether or not conditions precedent to the issue have been fulfilled, or whether or not limitations have been exceeded, estop the corporations, as against a bona fide purchaser of the bonds or coupons, from defeating them on the ground that these recitals were false, unless notice was given to the buyer by the face of the bonds, or by some public record prescribed by the constitution or by the act under which the bonds were issued as a test of the limitation or condition. Board v. Sutliff, 97 Fed. 270, 277, 38 C. C. A. 167, 173, 174; Dudley v. Board, 26 C. C. A. 82, 87, 80 Fed. 672, 677; Marcy v. Oswego Tp., 92 U. S. 637, 641, 23 L. Ed. 748; Humboldt Tp. v. Long, 92 U. S. 642, 645, 23 L. Ed. 752; Sherman Co. v. Simonds, 109 U. S. 735, 737, 3 Sup. Ct. 502, 27 L. Ed. 1093; Dallas Co. v. McKenzie, 110 U. S. 686, 687, 4 Sup. Ct. 184, 28 L. Ed. 285; Wilson v. Salamanca Tp., 99 U. S. 499, 504, 25 L. Ed. 330; Chaffee Co. v. Potter, 142 U. S. 355, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040; Board of Com'rs of Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 273, 274, 19 Sup. Ct. 390, 43 L. Ed. 689. The act which authorized the issue of these bonds prescribed no public record as a test of the limitation of the indebtedness of this city. The bonds contained no notice that they were in excess of the limit fixed by the act. They were for only $35,000, and the limit was $100,000. They contained these words and this figure: "City of Beatrice, Waterworks, Series 3." But they also contained the recital:

"The amount being within the limit authorized by law, the mayor and council of the city of Beatrice, Nebraska, were authorized to borrow thirty-five thousand dollars and pledge the property and credit of said city upon its negotiable bonds."

The fact that this issue of bonds was series 3 contained no notice or warning that the bonds previously issued aggregated so much that this series could not come within the limit fixed by the statute. The certificate of the officers of the municipality was that the bonds came within this limit. The statute intrusted to them the power and imposed upon them the duty to examine, see, and decide whether or not a favorable vote of the electors had been taken, whether or not the issue of these bonds would raise the debt of the city for waterworks above the statutory limitation, and whether or not every prerequisite of their lawful issue existed. They could not discharge their duty in the issue of these bonds without a careful consideration and decision of these questions. And the power in these officers to issue the bonds on behalf of this city under the conditions and limitations specified in the statutes necessarily imposed and carried with it the power to certify that these conditions had been fulfilled, that these limitations had not been exceeded, and that they "were authorized to borrow thirty-five thousand dollars and pledge the property and credit of the city upon its negotiable bonds." The mayor and city clerk of this municipality certified that there had been a compliance with the conditions and limitations prescribed by the statute, and that they were authorized to issue these bonds. The purchaser bought them in reliance upon this certificate. The city retained and used the proceeds of their sale. It is now too late and too unjust for it to deny the truth of the recital of its officers for the purpose of defeating its promises to repay the money which it received by means of their certificate.

Finally it is said that the bonds and coupons of the series of $80,000 are void because the proposition which was submitted to, and which received the approval of, the electors of the city contained no provision for the levy of a tax to pay the principal of the bonds. But the mayor and city clerk, whose duty it was to ascertain and determine, before they sent the bonds forth, whether or not a legal proposition for their issue had been sustained by a majority of the electors of their city, certified in the face of the bonds that their issue had been "duly authorized by a vote of more than a majority of all the electors voting on the proposition to issue the same," and that the mayor and council had found that all the requirements of law and conditions precedent and necessary to authorize the issue, negotiation, and delivery of the bonds had been fully complied with. This is, in legal effect, a recital that a lawful proposition to issue the bonds was submitted to and sustained by the voters. The statutes required the mayor and the city clerk to ascertain and determine, and empowered them to certify, this fact. Innocent purchasers bought the bonds in reliance upon it, and as against them the city is estopped from asserting its falsity to defeat them. The recitals in these bonds import that they were issued by authority of a majority vote of the electors of the city of Beatrice upon the proposition to issue them prescribed by law and by authority of just and honest action by the mayor, the council, and the clerk of the city. They relieve innocent purchasers of all inquiry, notice, and knowledge of the actual proposition submitted, and of the action of the mayor and council thereon, and estop the city from denying that the proposition prescribed by the statute was submitted to and sustained

by the electors, and that the bonds and coupons were issued in pursuance of that action.   National Life Ins. Co. v. Board of Education, 62 Fed. 778, 788, 792, 793, 10 C. C. A. 637, 647, 651, 652; Hughes Co. v. Livingston, 43 C. C. A. 542, 553, 104 Fed. 306, 317; Clapp v. Otoe Co., 104 Fed. 473, 485, 45 C. C. A. 579, 591; Board of Com'rs v. National Life Ins. Co., 90 Fed. 228, 231, 32 C. C. A. 591, 594; City of Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613, 40 L. Ed. 760; Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483; City of South St. Paul v. Lamprecht Bros. Co., 88 Fed. 449, 31 C. C. A. 585; Walnut v. Wade, 103 U. S. 683, 696, 26 L. Ed. 526; City of Huron v. Second Ward Sav. Bank, 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534; Board v. Heed, 41 C. C. A. 668, 101 Fed. 768.

There is no legal or just defense to these bonds, and the judgment below is affirmed.