# Tarpley *v.* The State.

79  271
Case 2
137   95

*Prosecution for Enticing away Servant.*

1. *Constitutionality of statute creating and punishing offense.*—At common law, an unauthorized interference by a third person with the contractual relations existing between master and servant, was an action-

[Tarpley v. The State.]

able tort; and the statute making it a misdemeanor, under certain circumstances, punishable by fine (Code, §§ 4325-27 ; Sess. Acts 1880-81, p. 42), is not an indirect attempt to punish the violation of a contract by fine and imprisonment, nor otherwise objectionable on constitutional grounds.

2. *Constituents of offense.*—When the contract of hiring is within the terms of the statute, and has not expired, it is as much a violation of the statute to hire the servant or laborer *after* as *before* he has abandoned the service of the master; but, *it seems,* knowledge by the defendant of the existence of the contract is a necessary element of the offense.

3. *Misnomer ; plea in abatement, of pending prosecution.*—There is a material variance between the names *Tarpley* and *Tapley,* which would support a plea in abatement on the ground of misnomer ; consequently, a pending prosecution against the defendant, by the latter name, can not be pleaded in abatement of a prosecution by the former.

From the County Court of Macon.

Tried before the P. S. Holt.

The warrant in this case, by which the prosecution was commenced, was founded on an affidavit made by W. R. Ivey, May 19th, 1885, which charged that "William Tarpley did knowingly interfere with, hire, employ, entice away, or induce to leave the service of affiant, Dan Ellington, who had contracted in writing to serve affiant for a given time, not exceeding one year, before the expiration of the time so contracted for." The defendant filed a plea in abatement, setting out another prosecution pending against him for the same offense; which was commenced by indictment, and in which the defendant was described as William *Tapley.* The court sustained a demurrer to this plea, and the defendant then pleaded not guilty ; on which plea issue was joined, and a trial had.

On the trial, as appears from the bill of exceptions, said Ivey, the prosecutor, exhibited the written contract between himself and said Dan Ellington, by which the latter agreed to work for him, as a farm laborer, from the 19th January to the 1st August, 1885, for $50 and his food ; and he testified, that said Ellington voluntarily left his service on the 23d March, and hired himself to the defendant on the next day; that he, witness, then went to see defendant, who lived near by, and notified him that said Ellington was under written contract to work for him until the 1st August, and asked him to discharge said Ellington from his service ; that defendant refused to discharge Ellington, and said that Ellington had told him, at the time of the hiring, that said Ivey had broken his contract with him ; which said Ivey thereupon denied, and insisted on the discharge of Ellington by the defendant. The defendant offered evidence tending to show that, when he hired Ellington, "he knew that said Ellington was under' contract to work for said Ivey, but did not know that the contract was in writing

until Ivey told him so ; that he had nothing to do with Ellington's leaving the service of Ivey ; and that Ellington, when coming to him for employment, told him that Ivey had broken his contract with him."

On this evidence, the defendant asked the court to charge the jury as follows : (1.) " If the jury believe, from the evidence, that Ellington had quit the service of Ivey, and had repudiated the contract, if he did so ; and if they believe that defendant had nothing to do with said quitting and said repudiation, but hired Ellington after he had so quit and abandoned his contract,—then the defendant is not guilty." (2.) " If the defendant employed Ellington after he had quit the service of Ivey, and had repudiated the contract with Ivey ; and that the defendant had nothing to do with the quitting and repudiation, but hired Ellington in good faith, believing that he had a right to do so,—then the defendant is not guilty." The court refused each of these charges, and the defendant excepted to their refusal.

W. F. Foster, for the appellant.

Thos. N. McClellan, Attorney-General, for the State.

SOMERVILLE, J.—The defendant was convicted of violating section 4325 of the present Code, as amended by the act of February 15, 1881.—Acts 1880–81, p. 42. This statute provides, that " any person who knowingly interferes with, hires, employs, entices away, or induces to leave the service of another, any laborer or servant, who has contracted in writing to serve such other person for any given time, not to exceed one year, before the expiration of the time so contracted for," without the consent of the employer, given either in writing or in the presence of some credible person, shall be guilty of a misdemeanor, and be punished by fine, the amount of which is specified. We omit the residue of this section, having reference to the employment of minors, as it has no bearing on this case.

1. It is contended that the act is unconstitutional, as an indirect attempt to punish by fine and imprisonment the violation of a contract. This is an erroneous view of the statute. It imposes no imprisonment for debt on any one, either directly or indirectly. It is not aimed at either the employer or the employee. It does not seek to punish the act of either contracting party, by which he fails or refuses to perform his obligation assumed to the other. The law is designed to prevent the tortious interference of strangers with the lawful contracts of master and servant, or employer and employee,

18

[Tarpley v. The State.]

when such contracts are reduced to writing.—*Driscol v. The State*, 77 Ala. 84. Under the rules of the common law, it was an actionable tort for any one to knowingly interrupt the contractual relations existing between master and servant, either by procuring the servant to leave the master's service, or by afterwards harboring or keeping him as a servant, during the stipulated period of service. The very act of giving the servant employment, in such a case, affords him the means and encouragement to keep out of the former service to which he has voluntarily bound himself.—2 Addison on Torts, Wood's Ed., § 1272. This being so, the act of one who violates the provisions of this statute, would be a tort; and a civil liability created by it would be one for the enforcement of which the General Assembly could constitutionally impose imprisonment.—*Ex parte Hardy*, 68 Ala. 303; *Lee v. State*, 75 Ala. 29.

2. The statute, in our opinion, very clearly prohibits the hiring of a servant or laborer after he has abandoned the service of the master, as well as before, provided the hiring be within the term of service covered by the written contract, and before its expiration.—Code, 1876, §§ 4325, 4327. The two charges requested by the defendant, assumed the contrary to be the law, and were properly refused.

It may be true, as contended in argument, that no conviction can be had under this section, unless the defendant, at the time of the hiring, knew of the existence of a written contract of service between the employer and employee; but there is no ruling of the court found in the record which raises this point.

3. The sustaining of the demurrer to the defendant's plea in abatement was obviously free from error. The present prosecution is against William *Tarpley*. The one shown to be pending in the same court, and sought to be pleaded in abatement, is against William *Tapley*, who, in legal contemplation, is another and different person. This variance in name is a misnomer, which would be fatal to conviction of the defendant under the first indictment.

No error appears in the record, and the judgment must be affirmed.