[Smith v. The State.]

# Smith *v.* The State.

*Indictment against Convict escaping from Service of Surety in Judgment confessed for Fine and Costs.*

1. *Confession of judgment for fine and costs, under contract for service by convict to surety; extent of involuntary service.*—The statute which provides for a confession of judgment in a criminal case, by the convict and his surety, under contract between them for the performance of labor or services by the former, and makes it a misdemeanor for him to leave or escape from such service (Sess. Acts 1882-3, p. 166), contemplates only the payment of the fine and costs, for the non-payment of which, under constitutional provisions (Art. i, § 33), imprisonment or hard labor may be imposed; and if the contract further provides for additional service by the convict, in payment of advances made to him, he can not be held to that service involuntarily, nor prosecuted criminally for his failure to perform it as stipulated, after his labor has paid the fine and costs.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case was founded on the provisions of the statute approved February 23d, 1883, entitled "An act to better secure payment of fines and costs in criminal cases;" which authorizes the confession of judgment by the convict and a surety, under written contract between them, approved by the presiding judge and duly recorded, the convict stipulating to perform labor or services for his surety until the fine and costs are repaid, and being declared guilty of a misdemeanor if he leaves or escapes from the service before the fine and costs are repaid by his labor. Sess. Acts 1882-3, p. 166. The material provisions of this statute are stated in the report of the case of *Lee v. State* (75 Ala. 29), and it is unnecessary to repeat them here. The defendant in this case, having been convicted of using profane or obscene language in the presence of females, for which he was fined $10 besides costs, confessed judgment for the amount of the fine and costs, with M. C. Enfinger as his surety, under a written contract between them, duly approved by the presiding judge and recorded, by which he agreed "to go immediately to work for said M. C. Enfinger, at the rate of $14 per month, furnishing himself, until the full amount of said fine and costs, with all advances the said Enfinger may make during said term, is fully paid;" and the indictment charged that he "failed to

VOL. LXXXII.

[Smith v. The State.]

comply with the provisions of said contract, and left or escaped from the service of said M. C. Enfinger, before said fine and costs and other advances were fully paid." On the trial, issue being joined on the plea of not guilty, said M. C. Enfinger testified, as the bill of exceptions shows, that the amount of fine and costs paid by him for the defendant was $20.20; that the defendant worked for him, under their contract, for about seven months, at the rate of $14 per month, and was indebted to him in the sum of $17.65 when he left the service; and he produced an itemized account which showed this balance against the defendant, after charging him with the value of all articles advanced, lost time, &c. On this evidence, the defendant asked the court to charge the jury, among other things, "that they must find the defendant not guilty, if they believed the evidence;" and he duly excepted to the refusal of this charge.

GARDNER & WILEY, and P. O. HARPER, for appellant.

THOS. N. McCLELLAN, Attorney-General, for the State.

SOMERVILLE, J.—The contract in the record seems to have been made, approved, and filed, in the mode prescribed by the act approved February 23, 1883, entitled "An act to better secure payment of fines and costs in criminal cases in the courts of this State."—Acts 1882–83, p. 166. The purpose of this statute is to enable convicts to procure securities for the payment of "the fine and costs" incidental to any conviction for a criminal offense in the courts of this State. Such fine and costs not being a debt within the meaning of the constitutional provision, that "no person shall be imprisoned for debt," it has been held that a convicted defendant could be lawfully sentenced to imprisonment, or hard labor, for the non-payment of such liabilities. In *Lee v. State*, 75 Ala. 29, we, on this ground, sustained the constitutionality of this act, now under consideration. The contract authorized to be made under its provisions, however, between the surety confessing judgment and the convict, does not extend beyond securing the *fine and costs* incident to the conviction. It can not be properly made to embrace money loaned or advanced by the hirer to the convict, or articles of property advanced, whatever their character. The hirer becomes the transferree only of the right of the State to compel the satisfaction of such fine and costs, and nothing more, by exacting the involuntary servitude of the convict, who himself contracts to change masters for this purpose. To attempt to hold the convict for any

[Mullens v. The State.]

contractual liability created for advances made, whether in money or property, is imprisonment for debt within the meaning of the constitution, and unauthorized.—*Ex parte Hardy*, 68 Ala. 303; *Tarpley v. State*, 79 Ala. 271. If such contracts were permitted, there would be no limit to the time for which one could be held to involuntary servitude, so long as the exigency of want, or weakness of purpose on the part of the borrower, prompted the acceptance of loans made to him under the form or color of advances.

The evidence in this case shows, that the fine and costs had been satisfied by the defendant before he left the service of the prosecutor, the law referring the satisfaction rendered to this liability, for which alone the defendant could be held under the contract. The only thing remaining due was a debt for advances made. For such a liability he could not be held to involuntary service. The evidence did not authorize a conviction, and the court erred in refusing to charge the jury to find the defendant not guilty, if they believed the evidence.

The judgment of the Circuit Court is reversed, and the cause remanded.