## Ex parte Davis.

*Application for Discharge on Habeas Corpus.*

1. *Jurisdiction of justice outside of precinct, or beat.*—Except when sitting as a committing magistrate on a preliminary investigation of a criminal charge, and other cases specially authorized by statute, a justice of the peace has no jurisdiction to hear and determine a criminal case outside of his own beat or precinct (Code, §§ 4233, 4274, 4279-82), though he may "issue process to any precinct in his county, returnable to his own court in his own precinct, and may, perhaps, while outside of his precinct, issue process anywhere within the county, returnable to his own court in his own precinct." (Limiting *Boynton v. State*, 77 Ala. 29.)

2. *Same; conclusiveness of judgment: defects available on habeas corpus.*—When a judgment rendered by a justice of the peace, in a criminal case, is regular on its face, and he had jurisdiction both of the offense and of the defendant's person, its validity can not be assailed on application for a discharge under *habeas corpus*, by parol evidence of the fact that it was rendered by the justice outside of his own precinct, and entered on his docket on his subsequent return home.

3. *Confession of judgment for fine and costs.*—On a confession of judgment by a surety for the defendant in a criminal case (Code, § 3832), he is bound only for the fine and costs; and if it shows on its face that the defendant's contract also binds him to perform service for advances made to him during the term, it is void entirely.

APPEAL from a judgment rendered by Hon. W. J. HILLIARD, judge of probate of Pike county, refusing to discharge the appellant, Jack Davis, from the custody of the sheriff of said county, who held him under a *mittimus* issued by a justice of the peace, "on a charge of violating a *criminal contract*," as the offense was described in the *mittimus*.

D. A. BAKER, and THOS. H. WATTS, for appellant.

WM. L. MARTIN, Attorney-General, for the State, cited *Boynton v. State*, 77 Ala. 29; *Taylor v. Woods*, 52 Ala. 474; *Horton v. Elliott*, 90 Ala. 480; *Smith v. State*, 81 Ala. 74; *Smith v. State*, 82 Ala. 40; *Wynn v. State*, 82 Ala. 55; 51 Ala. 34; Code, §§ 4233, 3832, 4255, 4289.

THORINGTON, J.—The petitioner was tried before a justice of the peace in Pike county, on a charge of violating a written contract alleged to have been entered into by him pursuant to the provisions of section 3832 of the Criminal Code, and on preliminary investigation before a justice of the peace was committed to jail to answer the charge in the Circuit Court of said county.

An application for a writ of *habeas corpus* was made by the petitioner to the judge of probate of said county, based on the ground that the contract which the petitioner was charged with having violated was not made and entered into in open court, on a confession of judgment by petitioner and his surety; this contention being predicated on the following facts : A warrant was duly issued, on affidavit, against petitioner on a charge of obtaining money on false pretenses, said warrant being so issued by a justice residing in Beat (or Precinct) 14 of said county. Afterwards, on December 28th, 1891, the justice who issued the warrant being on his way to Troy, which is in Beat 1 in said county, met an officer with petitioner, whom he had arrested under the warrant, and was carrying to the office of the justice in Beat 14 for trial. Petitioner thereupon informed the justice that he desired to plead guilty to the charge in the warrant; whereupon all the parties repaired to the sheriff's office in the court-house at Troy, where the petitioner put in a plea of guilty to the charge, of which plea and his judgment thereon the justice made a memorandum, and transferred the same to his docket on his return to his office in Beat 14.

The bill of exceptions states that, at the time of receiving the plea and noting the judgment, the justice did not open his court, nor did he have his docket with him, nor did he come to Troy on that day for the purpose of holding court; and that at the time of pleading guilty as aforesaid, petitioner signed a contract with one Bush to work for him as set forth in the bill of exceptions, which contract was approved by the justice, and purports to have been recorded in the office of the judge of probate. A copy of the judgment entered on petitioner's plea of guilty is shown by the bill of exceptions as it appears on the docket of the justice, and which recites that "the defendant appeared in open court, and pleaded guilty to the charge," &c. ; and also recites that the fine and costs were settled in full by said Bush.

There is nothing on the face of the judgment indicating that the proceedings were had, or the judgment rendered, elsewhere than at the office of the justice, or that the fine and costs were paid before the contract was entered into. The contract entered into by petitioner with said Bush is also set out in the bill of exceptions, and recites on its face that petitioner was, on the day of its date, convicted of a misdemeanor "in the justice court of Pike county, Ala.," and that said Bush had become the surety of petitioner for the fine and costs in the case. The contract binds petitioner

to work for said Bush a sufficient length of time to pay the
fine and costs, and also any advances Bush should make to
petitioner during the term of service, at the rate petitioner
was allowed to pay the fine and costs; and the contract also
includes ten dollars over and above the fine and costs, which
was paid by Bush to one Rhodes, at petitioner's request, on
a debt the latter owed Rhodes. The contract is signed by
petitioner and said Bush, and recites that it was signed in
open court. It is approved in writing by the justice, and
was recorded in the office of the probate judge.

In order to entitle the petitioner to a discharge on the
application for a writ of *habeas corpus*, something more than
mere irregularity and error in the proceedings or process by
which he is detained in custody must be shown. . If there is
jurisdiction in the court to try the offense imputed to the
prisoner, no error or irregularity which may have occurred
or been committed in exercising such jurisdiction can be
inquired into on *habeas corpus*. An appeal is the appropri-
ate remedy for the correction of such errors and irregulari-
ties.—*Ex parte McKivett*, 55 Ala. 236; *Ex parte State, in re
Long*, 87 Ala. 46. "Illegality, not irregularity, must infect
the proceeding, to authorize a discharge on *habeas corpus*."
*Ex parte Brown*, 63 Ala. 187.

The Constitution of this State requires the election of
two justices of the peace in each precinct of the counties,
by the qualified electors thereof, and defines their jurisdic-
tion in civil cases, but not in criminal cases.—Art. VI, § 26.
And the statute, Code, § 341, following the Constitution,
requires the election of two justices of the peace "for each
election precinct." Section 4233 of the Criminal Code de-
clares that justices of the peace have, in their respective
counties, jurisdiction of the offenses named in said section;
and chapter three of said Code provides the jurisdiction and
proceedings before justices, and other officers, on preliminary
investigations of public offenses.

In *Horton v. Elliott*, 90 Ala. 480, it was decided by this
court, that a justice of the peace, elected in one precinct,
has no jurisdiction to hear and determine a civil case in an
adjoining precinct, except in cases of emergency as provided
in the statutes. But it was said in that case, "In what we
have said no reference is had to the jurisdiction of a justice
when sitting as an examining court, on the preliminary inves-
tigation of a criminal charge."

In *Boynton v. The State*, 77 Ala. 29, in a case growing out of
a preliminary investigation of a public offense, in which one
justice of the peace had associated two others with him on

the hearing, it is said, "Two of these officers . . . were unquestionably competent to sit in the cause, either one of them alone constituting a legal examining tribunal for the purpose of such a trial. It was no objection to them that they were holding their court out of their beats, or precincts, because justices of the peace in this State have a criminal jurisdiction in such matters co-extensive with their counties;" and sections 4628, 4632 and 4663 of the Code of 1876 are cited to support the proposition. These sections are identical with sections 4223, 3716 and 4274 of the present Code, in so far as they affect the territorial jurisdiction of a justice of the peace, and sustain the proposition announced in the above cited case only in a limited sense.

There are several sections of the Code which prescribe specific cases in which justices of the peace may hear and determine preliminary investigations of crime, within their counties. outside of their own precincts ; such, for example, as sections 4274, 4279, 4280 and 4282; but the very fact that these statutes permit it in the cases therein designated, is sufficient to show that such authority would not exist but for such statutes, and excludes the idea that the jurisdiction exists in other cases not provided for by the statutes.

The principle, as announced in the words above quoted from *Boynton v. The State*, is stated too broadly, and should be confined in its application to cases of like character. The two justices who sat in that case, on the preliminary examination outside of their own precincts, were associated by another justice of the county with himself on such hearing; and it was therefore a case clearly provided for by the statute, and a case in which said justices could have exercised jurisdiction in any precinct in the county under like circumstances—that is, on being associated with himself by a justice, of equal grade, in such other precinct.—Crim. Code, § 4279. And as a proposition applicable, generally, to criminal cases triable before a justice of the peace, it could not be sustained.

The words in section 4233 of the Criminal Code, "in their respective counties" (which section specifies the criminal cases of which justices of the peace have jurisdiction), must be considered in the light of the constitutional and statutory provisions requiring the election of justices of the peace for each precinct in the counties, and with the body of laws in the Code relating to the jurisdiction of such officers, and also with reference to the laws protecting freeholders from suits before justices of the peace in other precincts than that in which they reside, except in the cases otherwise ex-

pressly provided for by statute.   So looking at the matter, we think a justice of the peace has jurisdiction in criminal cases mentioned in section 4233, "in their respective counties," in the sense that process may go out from his court to any precinct in the county, returnable to his court in his own precinct, and, perhaps, he may, while out of his own precinct, issue process anywhere within the county, returnable to his own court in his own precinct; and also, in the sense that he may sit outside of his own precinct, and anywhere within the county, in the special instances expressly prescribed by the statutes; but there is no general statute or authority for his hearing and determining cases, triable before him, outside of his own precinct.

Under the constitutional provision and the statute relating to his election, the court of a justice of the peace is a court for the precinct in which he is elected, and for him to hold such court in other precincts for the trial of cases within his jurisdiction, except when the statutes expressly permit it, would violate the intent and policy of the law, which intent and policy is the more apparent from the fact that a County Court is provided by law for each county, with monthly terms, for the trial of all misdemeanors committed anywhere within the county, including those of which justices of the peace are given jurisdiction.

In the case of *Phillips v. Thralls*, 26 Kansas Rep. 780, it is said: "In the absence of express statutory authority, a justice of the peace can not hold his court outside the locality which elects him, and of which he is an officer.   Whatever the limits to which process may go out from his court, or whatever the territorial jurisdiction conferred upon him, he is an officer of the township; his court is a court of the township, and his court, as a court, has no valid existence outside the limits of that township."   And in the same case it is further said: "One purpose contemplated in the organization of these courts was to have neighborhood courts. . . . . If one justice may move his court out of his township, to any other place in the county, all may; and we may have the spectacle of all the justices of all the townships in a county, congregating in the county-seat, and holding office there.   Thus would one of the beneficent purposes of these inferior courts be defeated."

In the case of *Durfee v. Grinnell*, 69 Ill. Rep. 371, it is said: "It is a familiar rule of the law, that, in our State, a justice of the peace has jurisdiction throughout the county in which he resides.   We know of no reason, nor has any been suggested, why a justice of the peace may not issue

any writ when he has jurisdiction, wherever he may be in the county, so he make it returnable to his office, which must be in his township. No law requires him to be in his township, or in his office, when he issues his writs; but he must be in his county, which is the limit of his jurisdiction. . . . . In all cases where there is a contest, or where he has to hear and adjudicate on any question, that must be done in his township, and at his office, which must be a known place, and which may be found by those required to appear before him." To the same effect is the case of *Foster v. McAdams*, 9 Tex. Rep. 542.

The general principle declared in these decisions is sound, and entirely consistent with the letter and policy of the statutes of this State relating to the jurisdiction of justices of the peace in criminal cases which they are authorized to hear and determine.

What has been said has no application to justices of the peace, if any, whose jurisdiction to try criminal cases is extended by special statute beyond the limits of their precinct; nor to justices of the peace while sitting in the preliminary investigation of public offenses, who sit on such investigation outside of their own precincts, in cases in which the statutes authorize them to sit in other precincts than their own; nor to cases in which a justice acts anywhere within his county as a conservator of the peace, pursuant to section 4680 of the Code.

If this were the only question in the case under consideration, it would be disposed of by what has been said; but there are other questions which must determine its disposition. Here, the jurisdiction of the justice, in the case in which petitioner pleaded guilty, and in which the contract for service was executed, and by virtue of which contract petitioner obtained his liberty, was regularly and properly acquired by affidavit and warrant duly made and issued in a case coming within the category of cases of which justices of the peace are given jurisdiction by section 4233 of the Criminal Code; and, furthermore, the judgment entered by the justice in the case appears on its face to be regular, there being nothing whatever to indicate that the plea of guilty was received, or the judgment taken or entered, or the trial had, outside of the precinct for which said justice was elected. If the objections raised by petitioner to these proceedings had come up on a direct attack, or on appeal, we would have felt bound to sustain them; but such is not the aspect of the case, as it comes before us; on the contrary, it is an attempt in a collateral proceeding to contradict

the record of the justice's court by parol testimony. This, it is not competent for the petitioner to do.

In the case of *Smith, Stebbins & Co. v. Engle*, 44 Iowa, 265, it is held that the jurisdiction of a court of limited jurisdiction having once attached, its subsequent proceedings are presumed to be as regular as those of a court of general jurisdiction, and they can not be collaterally impeached or attached. And in the case of *In re Watson*, 30 Kansas Rep. 753, in a *habeas corpus* case, it was held that the petitioner could not be heard to show by parol that a judgment which had been rendered against him in a criminal case, was rendered in a case heard and decided by his consent outside of the county in which the court had jurisdiction, and entered on the records of the court in regular form as though rendered in the course of proceedings in said court. In *Hazelett v. Ford*, 10 Watts, Penn. 101, it is said: "The justice is a judge of a court which, deriving its jurisdiction from statutory grants, proceeds in most things according to the substance contained in the forms of the common law, and his docket, as to things adjudicated by him, has the conclusiveness of a record." In *Coffman v. Hampton*, 2 Watts & Serg. 377, it is said: "The docket of a justice of the peace is the best evidence to show the cause of action before him, and parol evidence is inadmissible to contradict or vary it." In *Clark v. McCombs*, 7 Watts & Serg. 469, the above cases are approved, and it is held that the proceedings before a justice of the peace, "as to their conclusiveness, are placed on the same platform as the adjudication of a common-law court."

There may be, and are, many cases where, on account of the informal and careless manner in which proceedings are conducted before a justice of the peace and entered on his record, it becomes indispensable that parol testimony should be resorted to in aid of the record, and in order to make it intelligible; but, without going to the full length of some of the foregoing authorities, the proposition may be deduced from them, and from general principles of law, that where it is apparent that the justice had jurisdiction both of the subject-matter and of the person, and the record appears on its face to be regular and complete in itself, such record can not be impeached on a collateral attack by parol testimony, but must be taken as conclusive. The contract into which petitioner entered, therefore, is to be treated as though it had been taken in a case regularly and properly tried before the justice, as shown by the records of his court.

But, giving to it this effect, it still can not be held to be such a contract as is contemplated by section 3832 of the

Code. In view of the penal character of that section, inasmuch as it provides for the punishment of those who enter into contracts under its terms and afterwards violate them, its operation must be confined to such contracts as come clearly within the terms of the statute. Such contracts must be shown to have been entered into on a confession of judgment by the defendant and his surety for the fine and costs imposed on the defendant by the court on a conviction for a public offense, and the obligation of the contract must be limited to such fine and costs. The contract can not be made to embrace other considerations, such as advances to be made by the surety to the defendant, or money otherwise paid by such surety for the defendant. The surety confessing judgment with the defendant for the fine and costs becomes the transferree of the right of the State to compel the satisfaction of the fine and costs by exacting the involuntary servitude of the defendant, "who himself contracts to change masters for this purpose."— *Wynn v. The State,* 82 Ala. 55; *Smith v. The State,* 82 Ala. 40. The State itself would have no right to exact involuntary servitude of the convict for the payment or security of a mere debt, and consequently could not transfer any such right to the surety who confesses judgment for the defendant. Any obligation other than the fine and costs which might be secured by the contract, would be a debt within the meaning of the constitutional provision, that "no person shall be imprisoned for debt."

The contract under consideration on its face extends not only to the fine and costs adjudged against the defendant (the petitioner in this case), but also to advances to be made to defendant by said surety during the term of service. It is an entire contract, binding the defendant to eight months service for the payment of all of said obligations ; and there is nothing in the contract, or otherwise, from which it could be made known when the service had paid the fine and costs. But, independently of this last suggestion, the contract, by reason of its having been made to extend to other obligations than the fine and costs, and because of its not being made to appear that it was entered into by defendant and his said surety on a confession of judgment for the said fine and costs, is not such a contract as would support a prosecution against defendant for his abandonment of the surety's service before the expiration of the term of service fixed by the contract.

The commingling of other obligations in the contract with the fine and costs, in contracts made under the terms of this statute, brings such contracts within the influence of the de-

cisions of this court construing the crop-lien statute, and in which it is held that, if the crop-lien note given to secure advances includes in part articles of the class mentioned in the statute, and, in part, others not of such class, the lien is thereby vitiated as to the entire note.—*Bell & Co. v. Hurst & McWhorter*, 75 Ala. 44; *Evans v. English*, 61 Ala. 416; *Carter v. Wilson, Ib.* 434; *Schœssler v. Gaines*, 68 Ala. 556.

It results from what has been said that the probate judge of Pike county erred in denying petitioner the writ of *habeas corpus*, and in remanding him to the custody of the sheriff of said county; and judgment must be here entered granting the writ prayed for, unless the petitioner, on being certified of this opinion, is content to renew his application before a court of original jurisdiction.