UNITED STATES v. CLEMENT.

(District Court, D. South Carolina. June 5, 1909.)

1. SLAVES (§ 24*)—"PEONAGE"—DEFINED.

"Peonage," within the meaning of Rev. St. §§ 1990, 5526 (U. S. Comp. St. 1901, pp. 1266, 3715), which make the same unlawful, and the holding of any person to peonage a criminal offense, is the holding of persons in unwilling servitude in payment of debts, by means either of force or intimidation.

[Ed. Note.—For other cases, see Slaves, Dec. Dig. § 24.*

For other definitions, see Words and Phrases, vol. 6, pp. 5281, 5282.]

2. SLAVES (§ 24*)—PEONAGE—INTIMIDATION.

Inducing a person to labor in payment of debts by threats of prosecution may constitute intimidation and amount to peonage, if by reason of the different character of the parties such threats overcame the will of the servant and the service was involuntary.

[Ed. Note.—For other cases, see Slaves, Dec. Dig. § 24.*]

3. SLAVES (§ 24*)—PEONAGE—STATUTORY PROHIBITION—ELEMENTS OF CRIMINAL OFFENSE.

In order to constitute the crime of holding another person in peonage, it is not necessary that the defendant should have acted corruptly.

[Ed. Note.—For other cases, see Slaves, Dec. Dig. § 24.*]

4. SLAVES (§ 24*)—PEONAGE—ELEMENTS OF OFFENSE.

The fact that persons were induced to work for another in payment of debts through fear of prosecution if they refused did not render the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

master guilty of peonage, unless such fear was caused by threats of prosecution made by him at the time.

[Ed. Note.—For other cases, see Slaves, Dec. Dig. § 24.*]

5. CRIMINAL LAW (§ 381*)—EVIDENCE OF GOOD CHARACTER—WEIGHT.

While evidence of the good character of a defendant charged with crime is always admissible, and to be considered by the jury, yet, in determining the weight to which it is entitled, they should take into account the nature of the offense charged, and the nature and disposition of the witnesses; and if the jury believe that such witnesses are in sympathy with the act of the defendant, and would as readily testify to his good character, even if they believed him guilty, the testimony is not sufficient alone to raise a reasonable doubt of his guilt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 846; Dec. Dig. § 381.*]

E. F. Cochran, U. S. Atty., and Abial Lathrop, Asst. U. S. Atty. W. H. Parker, for defendant.

BRAWLEY, District Judge (charging jury). This is an indictment for the violation of what is generally known as the "peonage statute." It was enacted in 1867, and is now embodied in sections 1990 and 5526 of the Revised Statutes (U. S. Comp. St. 1901, pp. 1266, 3715). This statute was considered by the Supreme Court in the case of Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726, wherein that court defined peonage as a status or condition of compulsory service based upon the indebtedness of the peon to the master, the basal fact being indebtedness, and adopted the opinion of Judge Benedict in Jaremillo v. Romero, 1 N. M. 190, where for the first time, I think, in our judicial records, the system known as peonage had judicial interpretation. This system existed in New Mexico and certain other territories derived from Spain, and was a system of modified slavery. After the ratification of the thirteenth amendment, which abolished slavery, the Congress passed this act for the purpose of eradicating any form or kind of involuntary servitude. A cardinal feature of the system of peonage was the holding of persons in involuntary servitude in liquidation of debts. The beginning of such service was generally the voluntary act of the peon, and the intention of this legislation was to abolish this system wherever it prevailed, and to prohibit its extension or establishment in any state or territory where the conditions were such as to make it probable or possible that an ignorant and helpless population might be induced to submit themselves to a degrading and oppressive system, where under the color of legal rights the ignorant might be held in involuntary servitude in liquidation of debt or other obligations, and thus a new and odious form of slavery might be established.

In the Clyatt Case the defendant was charged with coming with two companions, each armed with shotguns, and carrying handcuffs and warrants for the arrest of five men; Clyatt claiming that they were indebted to him. They were carried off against their will to Clyatt's place of business, and I believe kept in the stockade under guard. The facts in the case which you are now to consider differ materially from those in the Clyatt Case. There is no proof whatever of any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of those brutalities and outrages which have so greatly shocked the public conscience in some of the peonage cases of which we have had reports; but slavery was none the less slavery when the master was mild and humane, and there may be a system of peonage wholly unattended by any circumstances of brutality. It is for you to determine, upon the testimony which has been offered here, whether the defendant has held any of the persons named in the indictment to involuntary service or labor in liquidation of any debt or obligation or otherwise. It is the holding of persons in unwilling servitude in payment of debts that is the gist of the offense denounced by the statute. There is nothing in the law which forbids voluntary service in liquidation of debts, and common honesty would require that a man who receives money or supplies, and promises to work and repay such advances by his labor, should fulfill his obligation; and it is not unlawful for any person who so makes advances upon those terms to use every proper means of persuasion to induce his debtor to perform his contract, but it is unlawful to compel such performance by force or by intimidation. What constitutes force or intimidation is a question of fact, and each case must depend upon its own circumstances. The character and condition of life of the two parties are always to be considered in deciding a question of this nature.

The specific charge here is, not that the defendant used any physical force to subdue the wills of the parties named in the indictment, and thus compelled them against their wish to remain in his service, for there is no proof whatever of any physical force or threat thereof; but the government's case is that the defendant, by threatening the parties named with prosecutions under the labor contract law of the state as it then was, or prosecutions for other offenses, induced these parties to remain in his service against their will, in order that he might secure by their labor the payment of their indebtedness to him. It is for you to say whether the government has made out its case. If you are satisfied beyond a reasonable doubt that the defendant by such threats of prosecution induced these parties, or any of them, to remain in his service against their will, overmastering their weakness by his strength, and thus subduing their wills to his, then it is your duty to convict him. If not, it is equally your duty to acquit. In determining this question, it is of no consequence whether the indebtedness claimed was an honest indebtedness or otherwise; nor should you consider whether or not it was a moral obligation of the parties named to pay their debts and to work in fulfillment of their contracts. A man may be bound by every sanction of common honesty to pay his debts and to work for another in fulfillment of such obligations; but the law forbids you to compel him to work against his will. There is no need to vindicate the wisdom of such a law. Without it a system of involuntary servitude, in which the weak, the dependent, the helpless, would be brought under subjection of the strong and masterful, and a system would be established as degrading to the humble as slavery itself, without any of the alleviating and beneficient features which made that institution so long endurable.

The court is requested by the learned counsel for the defendant to give you certain instructions:

(1) Where an indictment charges that the defendant held a party in involuntary servitude at a certain date, and the proof is such as to leave on the minds of the jury a reasonable doubt as to whether he was so held at that date, no matter what they may believe as to his having been so held at some earlier time before that date, the jury are instructed that the offense has not been proved as alleged, and they must acquit. (Request withdrawn. Refused.)

(2) Peonage is the unlawful holding of a man in involuntary servitude, compelling him to labor for another against his will, in liquidation of a debt, and this compulsion may be exerted either by force, threats, or intimidation; but the jury are instructed that the force exerted, of whatever kind, to constitute peonage, must be such as to subdue and constrain the will, and must have been willfully and knowingly exerted by the defendant. (Granted.)

(3) There is no law against any man working for another in payment of a debt, so long as he is not compelled so to work by force, threats, or intimidation. (Granted.)

(4) While the force exerted may be less than actual violence or physical restraint, while it is sufficient if the jury believe that the laborers were so influenced by fear of the defendant that their wills were subdued, yet this fear, in order to make the offense of peonage, must have been exerted by the defendant, and by him willfully, knowingly, and corruptly.

The Court: The court gives you that instruction, striking out the words "and corruptly." If he compels them by force, or by intimidation or threat, or otherwise, against their will, to remain in his service, the offense is complete. No allegation of corruption in it is charged.

(5) It is not sufficient that the laborers worked because they were in fear, if the fear were not excited by the defendant, and by him willfully, knowingly, and corruptly.

The Court: The court will strike out the word "corruptly," as it did before. The court instructs you that if the laborers worked for him, believing that if they did not work they might be prosecuted, and the defendant, the time he induced them to work, if they desired to leave, said nothing to them to remind them of their obligation, and did not at that time threaten them that if they left he would prosecute them, if they had in their own minds a conviction that under their contract they were bound to work, and they were not influenced by him to remain against their wills by any threats, or by being told at that time that they would be prosecuted if they did not work, and he brought no pressure upon them to overmaster their wills, by threatening to prosecute them, that charge, No. 5, is given.

(6) While it is true, in general terms, that if a party is under arrest for a criminal charge, and under promise to abandon the criminal charge he makes a contract to labor, such contract is a void contract, yet the jury are instructed that the promise in question, in order to make out peonage, must have been made by the person bringing the charge or procuring the charge to be brought, and by him for the purpose of returning the party into involuntary servitude.

171 F.—62

The Court: The court does not understand exactly what is meant by that request.

Mr. Parker: The idea of that request is to bring home the responsibility of the act to the party, the party who is charged with peonage because of it, to exclude those cases where a criminal charge being brought against a man, and where there comes the abandonment of the criminal charge, and the subsequent entry of that man into the service of the defendant, that wherever the charge was not brought for the purpose of bringing about that condition, where, as it happens sometimes, and frequently must happen, wherever kindly relations obtain between the master and the servant, the servant gets into trouble, goes to his master, says somebody has prosecuted him, and has convicted him, asks the master to pay the fine, and says he will work for the master, the master, absolutely indifferent, except to help out the poor creature, if the master has procured the charge, then it is a subterfuge; but, if somebody else, then he should not be held responsible because he helps the poor creature out of his trouble and gives him another chance.

The Court: The court gives you that instruction with that explanation. It does not understand that that is part of the government's case in this case at all.

(7) If the party remained in the defendant's service, fearing that if he left it he would be arrested on some charge, real or feigned, the jury is charged that that is peonage, but only provided the fear in question is so induced by the defendant, and by him willfully, knowingly, and corruptly.

The Court: The court gives you that instruction, striking out the word "corruptly"; that is, you must be satisfied beyond a reasonable doubt that the defendant, by his words or conduct, induced the parties named in the indictment to remain in his service against their will by threats of a criminal prosecution. Then that would be a case of peonage.

(8) The character of the defendant is always in issue, in a criminal charge, as an element for the jury to consider in determining the guilt or innocence of the defendant. (Granted.)

(9) Proof of character, in any case, may alone serve, in the absence of all other evidence, to raise in the minds of the jury a reasonable doubt as to the guilt of the defendant; and, where the character proved does raise such reasonable doubt in the minds of the jury, that alone entitles the defendant to an acquittal.

The Court: That is correct as a general proposition; but, in determining the weight to be given to testimony as to character, the jury should consider the nature of the offense with which the defendant is charged. If he is indicted for larceny, forgery, or other offense of a kind which implies moral obliquity, proof that he is a man of high character and unquestioned integrity would of itself raise a doubt whether a man of that character could be guilty of such an offense; but not so if the charge, for example, was for an assault and battery, for men of the highest integrity may be men of violent passions and have ungovernable tempers. Proof that a man is a man of integrity would not raise a doubt as to whether he is guilty of an assault and

battery. The question of character there, character of integrity, does not come into play, for the reasons stated. He may be of the highest character, and yet be of a very violent disposition, while proof of character as a peaceable man would have its weight in such a case. So, too, in considering the weight to be given to testimony as to character, you must consider the nature and disposition of the witnesses who have so testified, and how far they are likely to be in sympathy with the defendant, and whether they would look with disfavor upon him if they believed that he has really committed the offense charged.

Now, one of the legacies of that institution of slavery is that there are a number of people who believe that the negro will not work unless he is forced to work, and there is a strong disposition towards legislation of a kind which would compel work in payment of a debt. There is something to be said in favor of that view. It has found favor in the Legislature of the state, and this court has lately had in review certain labor contract laws of this state, where that was really apparently the intention of the Legislature. That particular law has been held unconstitutional in this court. It has been held unconstitutional by the Supreme Court of the state. A large majority of the judges of our own state have so held. But, notwithstanding that, there is a feeling that in some way or another there should be special legislation to compel the performance of these labor contracts. The court is not called upon to express its opinion as to the new legislation on that subject; but in considering the testimony of character, which has been offered, and upon which the defendant relies, and asks the court, in the instruction which has just been read, to instruct you that proof of character alone is sufficient to raise a reasonable doubt as to whether the defendant was guilty of this charge, the court instructs you that you should consider the character of that testimony, and the standpoint of those respectable gentlemen who gave their testimony, and consider, in determining the weight which you are to give to the testimony as to character, as to how far, or whether, these witnesses have any abhorrence of the offense charged against this defendant. If you have any reason to believe that they would give the same testimony even if they supposed that he was guilty of the charge, then such testimony is not sufficient to raise a doubt as to whether or not he is guilty of the charge.

There is a public sentiment in some parts of the South which finds expression in labor contract laws, that there is need of special legislation to compel the negroes to the performance of their contracts by imposing penalties for their violation, and in considering the testimony as to character the jury should consider, whether or not the witnesses are so far influenced by that sentiment that they would not be inclined to judge harshly any one who endeavored to put under pressure parties indebted to him for the purpose of securing performance of their obligations. Testimony of such witnesses to the good character of the defendant would not tend to raise any presumption of his innocence; for they might still believe him to be a man of integrity and character, although guilty of the specific offense charged against him.

Take the record.