# Williams v. The State.

### Refusing to Perform Convict Contract.

(Decided Jan. 30, 1912.  57 South. 1030.)

1. *Convicts; Contracts; Right of Hirer.*—Under a contract made pursuant to the statute by a convict with one who confesses judgment with him for the fine and costs, the surety as hirer acquires only the rights of the state to compel satisfaction of the fine and cost by the involuntary servitude of the convict.

2. *Same; Breach of Contract; Offense.*—An agreement between a convict and his surety by which the surety as hirer releases the convict from further service in consideration of a stipulated sum of money, did not constitute a failure or refusal by the convict to continue in the service so as to render him guilty of a failure to perform the contract, under section 6846, Code 1907.

3. *Same.*—Where a convict during the time of his contract is arrested lawfully under a criminal charge, and is unable to secure his release by giving bond, his failure to perform the contract under such circumstances did not render him guilty under section 6846, Code 1907, of a failure to perform his convict contract.

4. *Criminal Law; Guilt; Presumption.*—Every one is presumed innocent of crime until legally proven guilty.

APPEAL from Pike Law Court.

Heard before Hon. T. L. BORUM

Garfield Williams was convicted of a misdemeanor and entered into a convict contract with a surety who confessed judgment with him for the fine and cost, and was convicted of violating this convict contract, from which conviction he appeals.  Reversed and remanded.

E. R. BRANNEN, for appellant.  Counsel discuss the assignments of error and conclude that defendant was entitled to the charges requested by him, and that the court erred in refusing them, but he cites no authority.

R. C. BRICKELL, Attorney General, and W. L. MARANT, Assistant Attorney General for the State.  The

[Williams v. The State.]

court properly refused the charges requested on the authority of. *Giles v. The State,* 89 Ala. 50.

WALKER, P. J.—The appellant (the defendant below) was convicted of the offense provided for by section 6846 of the Code of failing or refusing without sufficient excuse to perform a contract with a surety who confessed judgment for the fine and costs assessed against the principal on his conviction of a misdemeanor.

By the contract entered into in such an event, "the hirer becomes the transferee only of the right of the state to compel the satisfaction of such fine and costs, and nothing more, by exacting the involuntary servitude of the convict, who himself contracts to change masters for this purpose."—*Smith v. State,* 82 Ala. 40, 2 South. 629; *Simmons v. State,* 139 Ala. 149, 36 South. 728. There was no evidence tending to show that the defendant in this case, before his arrest on another criminal charge under which he was held in custody at the time of the institution of the present prosecution, had in any way failed or refused to perform the service which in the contract with his surety he promised or agreed to perform. So far as the evidence shows, the defendant performed all the duties required of him as a farm or dairy hand from the time he entered into the contract up to and including the morning of the 10th day of September, 1910, which was a Sunday. During the interval on that day between the completion of his morning's work and the time in the afternoon when he would be required to perform any further service, he was arrested under another criminal charge, and was still in jail, detained there under that charge, when the present prosecution was instituted on the following morning.

What occurred between the defendant and his hirer during the interval of leisure which was allowed the former on Sunday, and before his arrest that day, did not constitute evidence of his failure or refusal to perform the service for which he had contracted. The hirer, J. G. King, having testified in reference to a disturbance which occurred between the defendant and his wife, both of whom lived on King's place, testified further, as stated in the bill of exceptions, that the defendant "about 2:30 o'clock called him (J. G. King, the witness) up over the 'phone, and told him that he would have to quit working for him; that he could not stand the way things were going on, and asked him (J. G. King) if it would be all right for him (defendant) to pay him (J. G. King) the balance due him and quit; that he (J. G. King) told the defendant that it would be all right for him to quit if he would get up the money and pay him (J. G. King) the balance due him," which balance, as stated by the witness, was for 23 days' labor at the rate of $8 per month.

This shows an agreement between the hirer and the convict that the latter would be released from further service in consideration of the payment of a stipulated sum to the former. Certainly the making of this contract did not constitute a failure or refusal by the defendant to continue in the stipulated service, from the performance of which the hirer, by that contract, agreed to release him. And the defendant was arrested before there was any breach of duty on his part by his failure either to pay the stipulated amount or to resume work for the hirer when further work was due to be performed. So it is plain that, up to the time of his arrest, the defendant was not chargeable with any failure or refusal to perform the service which he had promised or agreed to perform.

The arrest of the defendant legally put in abeyance his power or right to continue in the service of his surety. The law is not to be charged with the inconsistency of saying that a person who is legally detained in jail is required at the same time to be at work at another place. So long as the defendant was detained in the custody of the law under the new criminal charge brought against him, there was a suspension of the right of his hirer to exact the involuntary servitude provided for by the contract entered into on the confession of judgment for the fine and costs assessed on the previous conviction. During that time the law did not make it a crime for him to fail or refuse to do something which it did not permit him to do. The mere fact of the defendant's arrest and detention is not evidence of his guilt of the charge on which he was arrested.

He is presumed to be innocent of the offense charged against him until his guilt has been legally proved. Nor can it be imputed to the defendant as a fault that he did not furnish bail and secure his release from custody so as to enable him to take up his duties to his hirer at the appointed time Inability to furnish bail frequently is due to the poverty of the defendant and his friends. In short, while the defendant was detained under a lawful arrest, he was not chargeable with fault for failing to continue in the service of his hirer. There can be no question of the sufficiency of one's excuse for failing to be in person at one place at a given time when at that very time the law requires him to be in its custody at another place. While the defendant was under arrest, he cannot be said to have failed or refused without good and sufficient excuse to perform the service which he promised or agreed to perform for his hirer, within the meaning of the statute (Code, § 6848) making it a crime for him so to fail or refuse.

There was no other evidence than that above commented on tending to show that the appellant was guilty of the charge made against him. What has been said indicates the grounds of the court's conclusion that that evidence was legally insufficient to support the charge. It follows that the defendant was entitled to the general affirmative charge requested in his behalf.

Reversed and remanded.