## UNITED STATES v. BROUGHTON.

(District Court, S. D. Alabama, S. D.   March 13, 1914.)

### No. 4080.

1. SLAVES (§ 24*)—PEONAGE—INDICTMENT.

An indictment against defendant for peonage in compelling a convict, for whom defendant had become surety for the payment of a fine and costs, to work, alleged that defendant threatened such convict that if he refused to work out the debt he would have him arrested and put in jail, and that after such threat the convict did not voluntarily work, and did against his free will continue to work for defendant under the contract until a later date. The indictment further alleged that the convict was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

coerced and intimidated, but did not allege any wrongful act on defendant's part by which he was coerced or intimidated. *Held,* that the indictment was insufficient to charge that the convict was held in a condition of peonage.

[Ed. Note.—For other cases, see Slaves, Cent. Dig. § 113; Dec. Dig. § 24.*]

2. CONSTITUTIONAL LAW (§ 83*)—INVOLUNTARY SERVITUDE—LABOR CONTRACT—PEONAGE.

Code Ala. 1907, § 7632, provides that when a fine is assessed the court may allow defendant to confess judgment with good and sufficient sureties, and section 6846 declares that when this is done a convict may contract to render services for the surety in payment of the fine and costs, and if he does so, and refuses without sufficient excuse to perform the services, he must on conviction be fined not less than the amount of the damages which the party contracting with him has suffered by reason of his failure, or refusal, etc. *Held,* that section 6846, having been sustained by the highest state courts, was not in violation of Const. U. S. Amend. 13, prohibiting slavery or involuntary servitude except as a punishment for crime, the execution of the surety labor contract not operating to relieve the convict from his status as a prisoner, liable to perform the judgment for fine and costs, but merely to transfer his custody and services from the state to the surety; and hence his service for the latter does not constitute peonage.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 150–151½; Dec. Dig. § 83.*]

G. W. Broughton was indicted for peonage. On demurrer to indictment. Sustained.

Indictment for violation of section 5526, R. S. (U. S. Comp. St. 1901, p. 3715), and section 269, Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1142 [U. S. Comp. St. Supp. 1911, p. 1670]).

O. D. Street, Sp. Asst. U. S. Atty., of Birmingham, Ala., and Alex. D. Pitts, U. S. Atty. of Mobile, Ala.

F. W. Hare and John McDuffie, both of Monroeville, Ala., for defendant.

Wm. L. Martin, of Montgomery, Ala., for State of Alabama.

TOULMIN, District Judge. The first count of the indictment is admitted by the attorneys for the United States to be insufficient, and it is by them nol. prossed.

The second count alleges that, after said Fields entered upon the performance of the contract mentioned therein, the defendant threatened him that if he refused to work and labor for him to work out said debt he would have him arrested and put him in jail. The indictment fails to allege that anything was said or done by Fields to call for such alleged threat. There is no allegation that he had refused to work, or that he had expressed any unwillingness to work and labor under said contract. The alleged threat was but an idle threat under the circumstances, if intended as a threat at all. It was in fact a simple statement of what the state law provided for, and authorized to be done. Moreover, the alleged threat, if construed as such, was entirely conditional. Its execution was dependent on a contingency, a possible occurrence, which could only be brought about by the act of said Fields. However, he continued to perform work

and labor for the defendant, and so far as appears to the contrary, from any fact or facts alleged in the indictment, without complaint, presumably therefore in compliance with said contract. But it is alleged that after said threat said Fields "did not voluntarily work," and "did, against his free will," continue to work for the defendant under said contract until a later date. These allegations may be true as a matter of fact based on the presumption that convicts do not voluntarily work, especially when such work is imposed as a punishment for crime committed. But it is alleged that Fields was coerced and intimidated. How, it is not shown. He may have been restrained by the force of law and authority. But what wrongful act of the defendant is alleged by which said Fields was coerced and intimidated? The court finds none. The allegations in the indictment referred to are mere allegations of conclusions, and not of any fact or facts on which such conclusions are or may be based. There are none from which the court is able to say that said Fields was held to involuntary servitude. There is in fact no direct allegation in said second count that Fields ever refused to work for the defendant, or ever left his service. It may be implied from the allegation that Fields continued to work and labor for the defendant under the said contract until on or about the 14th of September, 1910.

Said count, however, charges as a conclusion that the defendant did, in the manner aforesaid, hold said Fields in a condition of peonage. There is no allegation that he was held in or to a condition of involuntary servitude, or that he was arrested and returned to a condition of peonage.

In my opinion the said second and third counts make no case of involuntary servitude or peonage, and the demurrers thereto are sustained.

The facts of this case, as I can learn and understand them from the indictment and demurrers thereto, so far as the same set out the facts, are substantially as follows:

[1] E. W. Fields was convicted in one of the state courts of Alabama of the offense of selling mortgaged property and was sentenced to pay a fine, for which judgment, and in addition thereto court costs, was rendered against the defendant by the court, whereupon the defendant in this case, G. W. Broughton, with said E. W. Fields confessed judgment before the court for the aggregate amount of said fine and costs. This was at the July term, 1910, of said court. On the 8th day of July, 1910, said E. W. Fields entered into an agreement to work and labor for said G. W. Broughton on his plantation in Monroe county, Ala., and under his direction, as a farm hand, to pay said fine and costs, for the term of 19 months and 29 days, at the rate of $6 per month together with his board, lodging, and clothing during said term of service, which was to end on the 7th day of March, 1912, and provided "said work is not dangerous in its character." This agreement was signed by both E. W. Fields and G. W. Broughton. It was signed in open court and was approved by the judge of the court. After said agreement was signed, said Fields entered the service of, and did work and labor for, said Broughton

while in his custody and under his direction, and during the time said Fields was so working for said Broughton the latter stated to Fields (called in the indictment "threatened" said Fields) that if he refused to perform work and labor for him he would have him arrested and put in jail. Fields continued to work and labor for said Broughton under the said contract until the 14th day of September, 1910, when, before he had worked out his term of service for the payment of the fine and costs, he refused to work and left the custody and control of said Broughton. On the 15th of September, 1910, Broughton personally appeared before the judge of the court of Monroe county, Ala., and on oath stated, in substance and effect, the facts which I have already recited as to the conviction of Fields, the fine and costs, the confession of judgment by Fields and Broughton as surety, the making of the agreement between them and its contents, with the averment that Fields had failed and refused, without a good and sufficient excuse, to perform said labor as agreed in said contract. This statement was in form an ordinary affidavit, upon which a warrant of arrest was issued and duly executed. It is not shown by any fact or facts that said Fields was, after his arrest under said warrant, returned to a condition of involuntary servitude or peonage or otherwise punished. For all that appears from the facts stated, he was not held at all or restrained of his liberty.

[2] The contention of the attorneys for the government is that by a confession of judgment by the convict with surety, as provided by the law of the state, the convict ceased to be a prisoner, and that he was released from the conviction.

The statutes of the state do not so provide, but do provide, in certain contingencies, for the convict's arrest and trial as for a misdemeanor. The statutes referred to are as follows:

"When a fine is assessed, the court may allow the defendant to confess judgment, with good and sufficient sureties, for the fine and costs." Section 7632, Code Ala. 1907.

"Any defendant, on whom a fine is imposed on conviction for a misdemeanor, who in open court signs a written contract, approved in writing by the judge of the court in which the conviction is had, whereby, in consideration of another becoming his surety on a confession of judgment for the fine and costs, agrees to do any act, or perform any service for such person, and who, after being released on such confession of judgment, fails or refuses without good and sufficient excuse, to be determined by the jury, to do the act, or perform the service, which in such contract he promised or agreed to do or perform, must, on conviction, be fined not less than the amount of the damages which the party contracting with him has suffered by such failure or refusal, and not more than five hundred dollars; and the jury shall assess the amount of such damages; but no conviction shall be had under this section, unless it is shown on the trial that such contract was filed for record in the office of the judge of probate of the county in which the confession of judgment was had, within ten days after the day of the execution thereof." Section 6846, Code Ala. 1907.

See, also, section 6847, Code Alabama 1907.

Numerous decisions of the Alabama Supreme Court hold that said statutes are valid as tested by the Constitution of the state, and that the conviction provided for under said statutes, and the fine and costs imposed thereon, are not paid or a judgment confessed therefor,

the defendant must be imprisoned in the county jail or be sentenced to hard labor for the county, and that imprisonment under such conviction is not violative of the provision of said Constitution prohibiting imprisonment for debt. The Supreme Court of the state has repeatedly held that the relation of debtor and creditor does not exist under the circumstances stated; that the state has full control over the convict, and until he has by his labor paid the fine and costs, for which he has confessed judgment, he may be arrested and fined or sentenced to hard labor for a refusal to work out his fine and costs, as for an escape. Neither fines nor costs in criminal cases are debts within the meaning of the constitutional provision, that no man shall be imprisoned for debt. Caldwell v. State, 55 Ala. 133; Lee v. State, 75 Ala. 29.

In 75 Ala. 29, the Supreme Court of Alabama said:

"Where the foundation of the injury complained of was the nonpayment of a debt—a debt created by contract—then by no device could the debtor be imprisoned for its nonpayment."

The court "limited the exemption to contract liabilities," and said, "For it is manifest that fines, forfeitures, mulcts, damages for a wrong or tort, are not a debt within the clause of the Constitution," which declares that no person shall be imprisoned for debt. There are money liabilities that are not debts incurred by contract inter partes. "A convicted defendant could be sentenced to imprisonment, or hard labor, for the nonpayment of the costs of his conviction. Such costs were only a money liability, but they were not a debt contracted."

In the case cited (75 Ala. 29) there was a demurrer to the indictment alleging the unconstitutionality of the statute (the Alabama statute, section 6846, code 1907). The court said:

"The particular objection to the statute is that it authorizes imprisonment for debt. We do not so understand the statute. The charge against the defendant was, not that he refused to pay a debt he had contracted, but that he ran away from the hard labor imposed on him as a punishment for the offense he had committed. He had not worked out the sentence to hard labor, to which he had been condemned. The statute * * * offers to convicted offenders the opportunity of selecting their own task master, the kind of service they will render, and of having a voice in the measure of compensation. * * * The confessed judgment, and the contract approved by the court, do not satisfy the offended law, nor pay the penalty imposed. They are but the condition on which the offender is permitted to select how and whom he will serve, in satisfying the broken law. No one would question the constitutionality of a statute, making it indictable for one sentenced to hard labor, to escape or flee from the service. We regard the present statute as substantially that identical thing, tempered to the offender by a humane impulse; and hence we hold it constitutional."

There are eight or nine other decisions by the Supreme Court of Alabama following the case last cited on the same subject and to the same effect. A different justice wrote the opinion in each of the several decisions referred to except one. Justice Stone wrote the opinion in 75 Ala. 29, cited supra, and in one of the later cases when he was Chief Justice. Smith v. State, 82 Ala. 40, 2 South. 629; Wynn v. State, 82 Ala. 55, 2 South. 630; Ex parte Joice, 88 Ala. 128, 131, 7 South. 3; Ward v. State, 88 Ala. 202, 7 South. 298; Ex

parte Davis, 95 Ala. 16, 11 South. 308; McQueen v. State, 141 Ala. 100–102, 37 South. 360; Bailey v. State, 161 Ala. 75–82, 49 South. 886.

In 95 Ala. 16, 11 South. 311, the court said:

"The party confessing judgment with the defendant for the fine and costs becomes the transferee * * * of the state to compel the satisfaction of the fine and costs by exacting the involuntary servitude of the convict, 'who himself contracts to change masters for this purpose.' "

In 88 Ala. 202, 7 South. 298, the court said:

"When a defendant, having been fined on conviction of a misdemeanor, has entered into a written contract to perform service for a surety in a confessed judgment for the fine and costs, and the contract has been duly approved and recorded, * * * he is regarded as performing compulsory service as a punishment, and is criminally liable for a failure or refusal to serve as stipulated."

In 88 Ala. 131, 7 South. 3, the court said:

"Imprisonment, as a satisfaction of the fine imposed, has always prevailed in Alabama, and in every other country where an enlightened system of criminal jurisprudence obtains. It is the only practical alternative, where the defendant refuses to pay or secure the fine."

In 82 Ala. 40, 2 South. 629, the court held that:

"A confession of judgment in a criminal case, by the convict and his surety, under contract between them for the performance of labor or services by the former, makes it a misdemeanor for him to leave or escape from such service, * * * contemplates only the payment of the fine and costs, for the nonpayment of which, under the constitutional provisions, * * * imprisonment or hard labor may be imposed. * * * The hirer becomes the transferee only of the right of the state to compel the satisfaction of such fine and costs."

The defendant in this case invokes the statutes of the state of Alabama, as construed by the Supreme Court of the state, as his defense and for his protection. He contends that on the law, as applicable to the facts shown in this case, he is not guilty of holding said Fields to a condition of involuntary servitude; nor is he guilty of holding said Fields to a condition of peonage, under the facts shown by the record in the case.

The federal courts uniformly follow and are guided by the decisions of the highest court of the state upon the construction of the Constitution and statute of the state, and upon the question whether the statute as construed violated any provision of the state Constitution. · If the act of the state Legislature, as construed by its highest court, conflicts with the federal Constitution, in a case that involves a question of a right under the Constitution and laws of the United States, it is the duty of this court to so decide and to thus enforce the provisions of the federal Constitution. Fallbrook Irrig. Dist. v. Bradley, 164 U. S. 154, 17· Sup. Ct. 56, 41 L. Ed. 369; First Nat. Bank v. Liewer, 187 Fed. 16–18, 109 C. C. A. 70; Clapp v. Otoe County, Neb., 104 Fed. 473, 45 C. C. A. 579; City of Beatrice v. Edminson, 117 Fed. 427–430, 54 C. C. A. 601.

The United States Supreme Court, in 164 U. S., cited supra, said:

"We should not be justified in holding the act to be in violation of the state Constitution in the face of clear and repeated decisions of the highest court

of the state to the contrary, under the pretext that we were deciding principles of general constitutional law." 164 U. S. 155, 17 Sup. Ct. 62, 41 L. Ed. 369; United States v. Clement (D. C.) 171 Fed. 974; Sunset Telephone & Telegraph Co. v. City of Pomona, 172 Fed. 829–831, 97 C. C. A. 251.

The thirteenth amendment of the Constitution of the United States provides that:

"Neither slavery nor involuntary servitude, except as a punishment for crime where the party shall have been duly convicted, shall exist within the United States."

There is no doubt that Congress may enforce this amendment by legislation punishing the holding of a person in involuntary servitude, except as a punishment for crime. In the exercise of that power, Congress has enacted what is known as the law denouncing peonage and punishing one who holds another in the condition of involuntary servitude. There is no doubt of the validity of this legislation. Its constitutionality is not questioned.

United States Revised Statutes, §§ 1990, 5526, prohibit peonage. What is peonage? It is a condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness between debtor and creditor. Clyatt v. U. S., 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726. The court in the Clyatt Case said:

"We need not stop to consider any possible limits or exceptional cases, such as * * * the power of the Legislature to make unlawful and punish criminally, an abandonment by an employé of his post of labor in any extreme cases."

The court clearly implying that there are extreme cases wherein the Legislature had the power to criminally punish.

The Supreme Court of Alabama has repeatedly held that section 6846 of the Code of 1907 was constitutional; that the convict Fields was put in the possession and custody of the defendant as the transferee of the state, under whose direction he was to work and labor to pay the fine and costs imposed on said Fields as a punishment for an offense he had committed against the law; that the said convict was not held to pay a debt, but to pay the fine and costs incident to his trial and conviction. Said courts have further held that the relation of debtor and creditor was not created or authorized by said statute, and that imprisonment under the statute for the nonpayment of the fine and costs would not be imprisonment for debt. As said by the court in 88 Ala. 131, 7 South. 3:

"It is the only practicable alternative where the defendant refuses to pay or secure the fine."

The United States Circuit Court of Appeals for this (fifth) Circuit, said:

"Federal courts will follow the decisions of the state court of last resort with reference to the construction of state statutes. * * * If we differed from the reasoning of the Alabama Supreme Court, * * * we would be constrained by established rules to be governed by decisions of that court as to the construction of the contracts and statutes involved here." Thompson v. Sloss-Sheffield Steel & Iron Co., 209 Fed. 840, 126 C. C. A. 564; Dickson v. Wildman, 183 Fed. 398–399, 105 C. C. A. 618.

The Supreme Court of Alabama has frequently held that the holding the convict for any contractual liability, whether in money or property, is imprisonment for debt within the meaning of the Constitution, and unauthorized. Ex parte Hardy, 68 Ala. 303; Tarpley v. State, 79 Ala. 271; Winslow v. State, 97 Ala. 70, 12 South. 423.

I am not convinced that there is any right under the Constitution and laws of the United States involved in this case. But if there was, and there is a doubt as to the constitutionality of the Alabama statute in question, it should not be declared unconstitutional. A reasonable doubt must be solved in favor of the legislative action and the statute be sustained. Cooley's Con. Lim. pp. 182–184; Sadler v. Langham, 34 Ala. 320, 321.

On the facts of this case, as I find them, and under the law applicable to those facts, my opinion is that the defendant is not guilty of unlawfully holding the said E. W. Fields in a condition of involuntary servitude; and further find that the defendant is not guilty of the charge of holding said Fields in a condition of peonage.